THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE McNEAL, Defendant-Appellant.

First District (4th Division)    No. 80-199

Opinion filed March 26, 1981.

James J. Doherty, Public Defender, of Chicago (John Lanahan, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Joan Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a jury trial in the circuit court of Cook County, defendant, Eddie McNeal, was found guilty of burglary (Ill. Rev. Stat. 1979, ch. 38, par. 19—1) and armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2). He was sentenced to four years to four years and a day.

On appeal, defendant contends: (1) the trial court improperly denied his request for a fitness hearing prior to trial; (2) he was not proven guilty beyond a reasonable doubt; (3) the trial court committed prejudicial error by giving the *Prim* instruction to the prospective jurors on *voir dire* and by giving the *Prim* instruction to the jury after all the evidence was presented but before final arguments; and (4) the trial court committed prejudicial error by indicating to the jury the court's impatience with defendant's cross-examination of a rebuttal witness.

We affirm.

The evidence presented at trial showed that, on March 5, 1975, at approximately 7:30 in the evening, defendant, accompanied by a juvenile, broke into the victim's apartment while the victim, an 80-year-old woman, was inside. The juvenile put a knife up to the victim's throat and told her to sit down in her kitchen chair. While the victim sat in the chair screaming, defendant and the juvenile ransacked her apartment and took many of her valuables.

A neighbor, hearing the victim's screams, called the police. Two policemen came to the scene. They arrested defendant in a small hallway just outside the door to the victim's apartment. They arrested the juvenile

inside the apartment. The victim identified both assailants to the police as being involved in the incident.

Defendant's defense was two-fold. First, he testified that he lived in another apartment in the building and had just been passing by the victim's apartment because he was taking his garbage outside. However, evidence showed that the entrance to defendant's apartment was on another side of the building and, from his apartment, he had no access to the hallway in which he was arrested. Second, he alleged he was insane or alternatively that he did not have a sufficient mental capacity to form a specific intent to commit burglary or to form the intent necessary to be accountable for the armed robbery. Defendant presented expert testimony to prove this defense and the State rebutted this testimony with an expert witness of its own.

The jury found defendant guilty and this appeal followed.

## OPINION

### I

Defendant first contends that the trial court improperly denied defendant's request for a fitness hearing. On several occasions prior to trial, the court ordered fitness examinations of defendant by the Psychiatric Institute of Cook County to determine if he was fit to stand trial. On the first such examination, the institute psychiatrist found defendant fit to stand trial. On the second occasion, defendant was found unfit. On the next three occasions, extending over a period of two years, defendant was found fit to stand trial. Based on the institute's psychiatric reports and evidence presented at a hearing, defendant was found by the trial court to be fit to stand trial and the trial court established a date for trial.

On the day the trial was to begin, counsel for defendant requested another fitness hearing. Counsel alleged he believed from his own examination of defendant that defendant was unfit to stand trial. The trial court asked counsel if he had any new evidence to show defendant's unfitness. Counsel answered he did not. The court then questioned defendant to determine if he understood the charges against him. Defendant gave ambiguous answers as he had apparently done during the prior hearings when the court had ordered psychiatric examinations. The trial court told defense counsel that unless he could present other evidence of unfitness, the trial would proceed. Counsel then asked for time to have his own expert examine defendant. The trial court granted him a month to do so.

One month later, at a hearing, defendant presented the affidavit of a psychologist who had tested defendant and found his IQ to be 61, indicating mild mental retardation. Defense counsel then moved for a dismissal of the charges claiming the defendant was unfit to stand trial and would never be fit to stand trial. The finding of the psychologist merely

verified the last three reports filed by the institute psychiatrists. These reports had all found defendant fit to stand trial. Based on this, the trial court denied defendant's motion and asked defense counsel if he wanted another fitness hearing. Counsel answered no, and the trial proceeded.

Based on the foregoing, there is a substantial question as to whether the trial court ever denied defense counsel's request for a fitness hearing. It appears that the court may have merely postponed a ruling on whether to have a fitness hearing until defendant was examined by his own expert. Following this examination, defendant did not continue to request a fitness hearing but instead merely sought a dismissal of his charges. However, even assuming the trial court denied defendant's request, we believe that the trial court properly did so.

■■■ A trial court is required to order that a determination of fitness be made when it finds there is a bona fide doubt of defendant's fitness to stand trial. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—1(c).) Whether there is a bona fide doubt is a matter within the discretion of the trial court. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Though defendant in the present case gave ambiguous answers to questions concerning his ability to understand the charges against him, he had apparently done this on each prior occasion, when the trial court had ordered a psychiatric examination. The last three reports of the institute psychiatrists expressed the psychiatrists' opinions that defendant was fit to stand trial. The only new evidence defendant offered to prove he was unfit was the psychologist's opinion as to defendant's low IQ. However, the psychologist's opinion merely verified the prior psychiatric opinions that defendant was mildly retarded. Thus, we believe that the trial court could have properly found that no bona fide doubt existed as to defendant's fitness to stand trial. Accordingly, we conclude the court did not abuse its discretion in denying another fitness hearing.

## II

Defendant next contends he was not proven guilty beyond a reasonable doubt. The victim, the neighbor who called the police, and the arresting officers all testified at trial. They all confirmed the facts set out in this opinion.

■■ There were some minor discrepancies in the victim's testimony at trial. For example, she could no longer remember at the time of trial, which took place five years after the incident, which one of the assailants had entered the apartment first. On the day of the incident, she had told the police the juvenile had entered first. At trial, she testified that she did not know the assailants had taken her jewelry until the jewelry was shown to her at the police station. However, the police officers testified that the victim had told them at the scene of the incident that the assailants took

her jewelry. Finally, she could not identify defendant at trial, though she had identified him on the day of the occurrence. Nevertheless, her failure to identify defendant at trial was amply explained by the fact she had slowly been going blind while waiting the five years for the case to come to trial.

Outside of the foregoing minor discrepancies, the evidence against defendant was overwhelming and we believe he was properly found guilty beyond a reasonable doubt.

### III

Defendant next contends that the trial court committed prejudicial error by giving the *Prim* instruction to the jury during the *voir dire* examination of prospective jurors and again after all the evidence was presented. (See *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) The *Prim* instruction given in the present case reads as follows:

"Your verdicts must represent the considered judgements of each of you. In order to return a verdict it is necessary that each juror agree thereto. Your verdicts must be unanimous, must be in writing and must be signed by each of you who serve as a juror in this case.

It is further your duty as jurors to consult with one another and to deliberate with a view towards reaching an agreement and to do so without violence to your individual judgment. Each of you must decide the case for yourself but to do so only after an impartial consideration of all the evidence with your fellow jurors. In the course of your deliberations do not hesitate to examine your own views and change your opinion if convinced it is erroneous, but do not under any circumstances surrender your own conviction as to the weight or the effect of the evidence solely because of what one of your fellow jurors feels, for the sole purpose of returning a verdict.

You are not partisans. You are judges, judges of the facts. Your sole interest is to ascertain the truth from the evidence presented during the course of this trial."

The purpose of the *Prim* instruction is to assure that, in a case where a jury is deadlocked, the jurors will closely examine their competing views and try to reach a unanimous verdict. The language of the instruction has been approved by our supreme court as being nonprejudicial to defendant's right to a fair trial when the instruction is given to a deadlocked jury. (*People v. Preston* (1979), 76 Ill. 2d 274, 391 N.E.2d 359; *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Defendant does not challenge this view.

However, defendant contends that the giving of the instruction before the trial court perceives that the jury is having difficulty reaching a verdict constitutes prejudicial error.

■■ This court has approved the giving of the *Prim* instruction at the time it was given in the present case. (See *People v. Bonds* (1980), 87 Ill. App. 3d 805, 410 N.E.2d 228; *People v. Kent* (1973), 15 Ill. App. 3d 523, 305 N.E.2d 42.) The theory supporting the propriety of giving the *Prim* instruction at the times noted is that if the instruction is not considered coercive when given to a deadlocked jury, it can hardly be considered coercive when it is given along with all the other instructions before the jury has begun to deliberate or before the jury has even been chosen.

In the present case, we find that the defendant was not prejudiced by the giving of the *Prim* instructions before trial and at the close of all the evidence. Thus, we find defendant's contention is without merit.

### IV

Finally, defendant contends the trial court committed prejudicial error by indicating to the jury the court's impatience with defendant's cross-examination of a rebuttal witness.

In his defense, defendant presented evidence to show his IQ was between 50 and 60, making him mildly retarded. Defendant also presented the testimony of two psychiatrists who testified that defendant's IQ, life history, and reactions during interviews, indicated to them that defendant was, at the time of the offense, suffering from a mental defect causing him to have lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

■■ In rebuttal, the State presented its own psychiatrist who had examined defendant. He contradicted defendant's witnesses' opinions and stated he believed defendant was sane at the time of the offense. He also stated that in his opinion defendant's true IQ was between 70 and 80. During cross-examination, defense counsel tried to get the State's rebuttal witness to change his opinion and to admit that he had no objective basis for saying that defendant's IQ was greater than 60. The witness refused to do this. Over a period of several hours, counsel proposed questions, repeated questions, reworded questions, and summarized answers, until the trial court finally began sustaining the State's objections and told counsel he had made his point and to move on to other areas. Despite this, defense counsel continued to pursue cross-examination in the same area and the trial court allowed him to do so. Finally, the court told counsel in a side bar that he would have only 15 more minutes to complete his cross-examination.

Defendant contends that the trial court's showing of impatience with

counsel's cross-examination created prejudice in the jury against him and denied him a fair trial. Considering the circumstances, we do not believe the court's rulings indicated any impatience on the court's part or harmed the defendant in any way. The trial court was commendably lenient in allowing defense counsel to continue in his cross-examination as long as counsel had, and it is apparent that the trial court had to step in and compel defense counsel to complete his cross-examination if there was any hope of completing the trial. Necessarily, we conclude that defendant's contention is without merit.

Accordingly, for the reasons noted, we affirm the conviction of defendant.

Affirmed.

ROMITI, P. J., and JIGANTI, J., concur.