STATE of Wisconsin, Plaintiff-Appellant,

v.

Dean GARFOOT, Defendant-Respondent-Petitioner.

Supreme Court

*No. 94–1817–CR. Oral argument October 30, 1996.—Decided February 4, 1997.*

(Also reported in 558 N.W.2d 626.)

214

ABRAHAMSON, C.J., concurs.
GESKE and BRADLEY, J.J., join.
BABLITCH, J., concurs.

For the defendant-respondent-petitioner there were briefs by *T. Christopher Kelly* and *Reynolds, Thomas, Kelly & Habermehl, S.C.*, Madison and oral argument by *T. Christopher Kelly*.

For the plaintiff-appellant the cause was argued by *Diane M. Nicks*, assistant attorney general with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. DONALD W. STEINMETZ, J. The issues in this case are: (1) what standard should properly

216

govern review of a trial court's determination of a defendant's competency to stand trial; and (2) whether a defendant shall be subjected to a criminal trial when the state does not present sufficient evidence to convince the trial court that the defendant is capable of understanding the fundamental nature of the trial process and of assisting his or her counsel. Because we find that the trial court is in the best position to weigh all the evidence necessary to make a competency determination, we hold that a court reviewing such a determination should apply a "clearly erroneous" standard of review. We further hold that because the state bears the burden of proving a defendant's competency when it is put at issue by the defendant, a defendant shall not be subjected to a criminal trial when the state fails to prove by the greater weight of the credible evidence that the defendant is capable of understanding the fundamental nature of the trial process and of meaningfully assisting his or her counsel.

¶ 2. On May 13, 1993, Dean Garfoot (Garfoot) was charged with attempted first-degree sexual assault in violation of Wis. Stat. §§ 940.225(1)(b) and 939.31(1). At the request of Garfoot's attorney, the circuit court ordered a competency examination of Garfoot after his initial appearance pursuant to Wis. Stat. § 971.14(1) and (2). The court appointed Dr. Patricia Jens to conduct the competency examination of Garfoot in accordance with Wis. Stat. § 971.14.

¶ 3. Dr. Jens is a board certified psychiatrist who is frequently appointed by courts to conduct competency evaluations. After meeting with Garfoot, Dr. Jens issued a report containing her observations. She noted that when Garfoot is questioned, he smiles and agrees with everybody and will act as if he understands things even if he does not. She also noted that Garfoot

was able to "parrot back" information that she fed to him at the beginning of the interview, but was unable to retain it at the end of the interview about an hour and a half later.

¶ 4. As far as his ability to understand and to participate in the proceedings against him, Dr. Jens explained that Garfoot was unable to understand the range of possible penalties for his offense, was unable to understand the different kinds of pleas even though he could repeat them by name, and was unable to understand concepts such as the burden of proof or the difference between a bench trial and a jury trial.

¶ 5. Dr. Jens opined that Garfoot would not ever be able to participate meaningfully in a criminal trial because of his developmental disability. She concluded that Garfoot can recall facts, but cannot relate them to a legal proceeding so as to aid his attorney. She also stated that Garfoot would be unable to make informed decisions, could not grasp the implications of a decision whether or not to testify, and would not be able to communicate with his attorney about testimony that may be inaccurate. Dr. Jens' ultimate conclusion was that Garfoot was not competent to stand trial.

¶ 6. The State requested, and was granted, the appointment of a second examiner of its own choosing. The State chose Dr. Michael Spierer, a psychologist, to conduct the second competency examination of Garfoot. He determined that Garfoot has an IQ of 64 which places him in the lowest 2.2 percent of the population. Dr. Spierer concluded that Garfoot functions on about a third-grade level. However, he did not know whether Garfoot was capable of learning at a third-grade level.

¶ 7. Dr. Spierer used a standardized test known as the competency screening test to help evaluate an

individual's competence to stand trial. The highest possible total is 44; the lowest is zero. A score of less than 20 raises questions about an individual's competence. Garfoot's score was 18. In response to Dr. Spierer's questions, Garfoot gave inadequate and inappropriate answers.

¶ 8. Dr. Spierer conceded that Garfoot would have problems comprehending complicated questions and that he may not follow certain lines of testimony. He opined, however, that Garfoot's low IQ would not preclude him from understanding the proceedings or from significantly assisting in his defense. Nonetheless, he acknowledged that Garfoot would have a very hard time keeping up with questions on cross-examination and could become frustrated and upset in attempting to do so. Dr. Spierer described Garfoot's ability to understand the legal defenses available to him as "marginal" or "minimal."

¶ 9. Dr. Spierer ultimately testified, in response to the court's questioning, that if he were to characterize the level of Garfoot's competency, "it would be at the margin." Therefore, Dr. Spierer concluded that Garfoot was only "marginally competent" to proceed to trial.

¶ 10. On February 4 and 10, 1994, the court held a competency hearing at which the two experts testified. On March 18, 1994, the Dane County Circuit Court, Judge Stuart A. Schwartz, issued a written decision in which it determined that the State failed to meet its burden of proving by the greater weight of the evidence that Garfoot was competent to stand trial. The trial court relied on the Wisconsin test for competency—a two-part test enunciated by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam). Under *Dusky*, the test to determine a defendant's competency to stand trial is

219

"whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Id.*

¶ 11. The court later held a hearing in May of 1994 to determine whether Garfoot would likely gain competence within the time frame established by Wis. Stat. § 971.14(5)(a). In remarks to counsel at this hearing, the court explained that although the State may have met its burden in proving that Garfoot understands the proceedings, it failed to meet its burden in the initial competency hearing of demonstrating that Garfoot can assist counsel in any meaningful way. For this same reason, the State's failure to meet its burden of proof, the court determined that Garfoot would not likely regain his competence within the statutory time frame. The court entered an order of dismissal.

¶ 12. The State appealed the dismissal to the court of appeals, arguing that the circuit court applied a heightened standard of competence in this case. The State claimed that the circuit court had "rubber-stamped" Dr. Jens' medical determination rather than making a proper legal determination as to Garfoot's competence. Applying a de novo standard of review, the court of appeals reversed and remanded for further proceedings. The court concluded that the trial court did not apply the appropriate standard to the testimony by the expert witnesses, did not consider Garfoot's abilities with reference to the trial likely to take place, and did not consider fully its power to modify the proceedings. Garfoot appealed to this court, and we now reverse the court of appeals.

██

¶ 13. In Wisconsin, "[n]o person who lacks sub-
stantial mental capacity to understand the proceedings
or assist in his or her own defense may be tried, con-
victed or sentenced for the commission of an offense so
long as the incapacity endures." Wis. Stat. § 971.13(1).
There are several theoretical reasons supporting the
legal principle that an incompetent or unfit defendant
may not be required to stand trial:

> (1) were he tried it would violate the long-stand-
> ing common-law view that persons should not be
> tried *in absentia*; (2) he cannot defend himself, and
> as a consequence he cannot exercise his constitu-
> tional right to be informed of the accusation, he
> cannot confront his accusers; and (3) the court lacks
> jurisdiction over him.

Donald Paull, *Fitness to Stand Trial* 8 (Charles C.
Thomas 1993). Because a person's constitutional and
procedural rights are at issue, then, fundamental fair-
ness precludes the prosecution of a mentally
incompetent individual. *State ex rel. Matalik v. Schu-
bert*, 57 Wis. 2d 315, 322, 204 N.W.2d 13 (1973).

██

¶ 14. Whenever there is a reason to doubt the
competency of a defendant to proceed, the trial court
must order an examination of the defendant under
Wis. Stat. § 971.14(1)(a) and (2). The examiner must
submit a report "regarding the defendant's present
mental capacity to understand the proceedings and
assist in his or her defense." Wis. Stat. § 971.14(3)(c). If
the question of the defendant's competency is con-
tested, the court shall hold an evidentiary hearing.
Wis. Stat. § 971.14(4)(b). If the defendant claims to be
incompetent, the state bears the burden of proving by

the greater weight of the credible evidence that the defendant is competent. *Id.* If the defendant claims to be competent, the state must prove by clear and convincing evidence that the defendant is incompetent. *Id.*

¶ 15. The basic test for determining competency was established by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam). A person is competent to proceed if: 1) he or she possesses sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding, and 2) he or she possesses a rational as well as factual understanding of a proceeding against him or her. *Dusky*, 362 U.S. at 402. The Court later expanded on this test, noting that "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

¶ 16. Wisconsin Statutes § 971.13(1) is the codification of the *Dusky* test. In Wisconsin, if a defendant claims to be incompetent, the court shall find him incompetent to proceed unless the state can prove by the greater weight of the credible evidence that the defendant is competent under the two-part *Dusky* standard as explained by the court in *Drope*.

¶ 17. To determine whether the state has met its burden of proving a defendant competent, the trial court must weigh evidence that the defendant is competent against evidence that he or she is not. The trial court is in the best position to decide whether the evidence of competence outweighs the evidence of incompetence. Although the court could make precise

findings of fact about the skills and abilities the defendant does and does not possess, the court must ultimately determine whether evidence that the defendant is competent is more convincing than evidence that he or she is not. The trial court is in the best position to make decisions that require conflicting evidence to be weighed.[1] Although the court must ultimately apply a legal test, its determination is functionally a factual one: either the state has convinced the court that the defendant has the skills and abilities to be considered "competent," or it has not.

¶ 18. The trial court's superior ability to observe the defendant and the other evidence presented requires deference to the trial court's decision that a defendant is or is not competent to stand trial. Only the trial court has the opportunity to view the defendant. Only the trial court can judge the credibility of witnesses who testify at the competency hearing. Thus, only the trial court can accurately determine whether the state presented evidence that was sufficiently convincing to meet its burden of proving that the defendant is competent to stand trial.[2]

¶ 19. The trial court's determination of whether there is reason to doubt the defendant's competence and order an examination is disturbed on appeal only if

---

[1] Hofer, Standards of Review—Looking Beyond the Labels, 74 Marq. L. Rev. 231 (1991).

[2] The court of appeals' opinion notes that only two published cases appear to exist throughout the United States in which an appellate court has reversed a trial court's determination that a defendant is incompetent to stand trial. *State v. Guatney,* 299 N.W.2d 538 (Neb. 1980); *State v. Hebert,* 174 So. 369 (La. 1937). This is likely attributable to the notion that the trial court is in the best position to make such a determination.

the trial court exhibited an erroneous exercise of discretion or if the trial court decision was clearly erroneous. *See State v. Weber*, 146 Wis. 2d 817, 823, 433 N.W.2d 583 (Ct. App. 1988). *See also State v. Haskins*, 139 Wis. 2d 257, 264–65, 407 N.W.2d 309 (Ct. App. 1987) ("reason to doubt" competency is a factual finding reviewable under the "clearly erroneous" standard); *State v. McKnight*, 65 Wis. 2d 582, 595–96, 223 N.W.2d 550 (1974) (trial court ruling that there was no "reason to doubt" competency affirmed on finding that trial court had not abused its discretion).[3] It only makes sense to apply the same standard of review to a trial court's determinations of competency.

¶ 20. We stated in *Pickens v. State*, 96 Wis. 2d 549, 569, 292 N.W.2d 601 (1980), that the trial judge is in the best position to observe the defendant's conduct and demeanor and to evaluate the defendant's ability to present a defense. "We realize, of course, that the determination which the trial court is required to make must necessarily rest to a large extent upon the judgment and experience of the trial judge and his own observation of the defendant. For this reason, the trial court must be given sufficient latitude to exercise its discretion in such a way as to insure that substantial justice will result." *Id.* The court held that the trial judge's determination that a defendant "is or is not competent to represent himself will be upheld unless totally unsupported by the facts apparent in the record." *Id.* at 570. This is essentially a "clearly erroneous" standard of review.

---

[3] Older cases may still define the standard, but the term "abuse of discretion" has been abandoned in favor of the term "erroneous use of discretion." *City of Brookfield v. Milwaukee Metro Sewage Dist.,* 171 Wis. 2d 400, 491 N.W.2d 484 (1992).

¶ 21. We conclude that the same deference should be given to the trial court regarding determinations of competence to stand trial as is given for determinations of competence to represent oneself. Because the trial court is in the best position to observe the witnesses and the defendant and to weigh the credible evidence on both sides, appellate courts should only reverse such determinations when they are clearly erroneous. *See* Wis. Stat. § 805.17(2).[4]

¶ 22. The "clearly erroneous" standard is most suited to review of a competency determination. The standard is time-tested, well understood, and appropriate for a determination that is primarily factual.

¶ 23. In the case at bar, the trial judge determined that the State's evidence that Garfoot was competent was no more convincing than Garfoot's contrary evidence, and that the State thus failed to meet its burden of proof. We review that decision under a "clearly erroneous" standard.

¶ 24. Wisconsin Statutes § 971.13(1) codifies the *Dusky* standard of competency. It states: "No person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." *Id.* The two-part *Dusky* standard has been explained by the Court in *Drope* to mean that a person may not stand trial unless he or she has the capacity to understand the nature and object of the proceedings against him or

---

[4] Wis. Stat. § 805.17(2), states in part that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

her, to consult with counsel, and to assist in preparing his or her own defense. *See Drope*, 420 U.S. at 171.

¶ 25. The State argues that the standard for competence is minimal, not optimal, and cites to an ALR annotation that suggests that some courts have failed to find that mental retardation alone warrants a finding of incompetence in the absence of mental illness.[5] The State is correct in that mental retardation in and of itself is generally insufficient to give rise to a finding of incompetence to stand trial. [6] However, a defendant

[5] It seems that courts have a tendency to treat mentally ill defendants and mentally retarded defendants differently in making competency determinations. Perhaps this is because mentally ill defendants stand a better chance of becoming competent than do mentally retarded defendants. Law professor Richard Bonnie explains as follows:

> In cases involving mentally ill defendants, it is likely that forensic and judicial practice errs in the direction of finding incompetence in marginal cases, at least in the early phases of the pretrial process. This is so for a variety of reasons, including the perceived need for therapeutic restraint and the provisional nature of the finding of 'incompetence' in most cases. If a defendant with mental retardation is found incompetent to proceed, however, 'restoration' of competency is unlikely in most cases, and the pretrial finding of incompetence is therefore likely to be a definitive bar to adjudication. In light of the dispositional consequences of a finding of incompetence, forensic and judicial practice probably tilt toward findings of competence in marginal cases.

Bonnie, The Competence of Criminal Defendants with Mental Retardation to Participate in Their Own Defense, 81 J. Crim. L. & Criminology 419, 422 (1990).

[6] *See People v. McNeal,* 419 N.E.2d 460 (Ill. App. 1981) (a Weschler Adult Intelligence Scale (WAIS) IQ of 61 reported in the context of expert testimony that defendant was competent did not give rise to bona fide doubt of defendant's competence); *People v. Jackson,* 414 N.E.2d 1175 (Ill. App. 1980) (a WAIS IQ of 51 and the defendant's refusal to talk to counsel or appear in

may be incompetent based on retardation alone if the condition is so severe as to render him incapable of functioning in critical areas. *See State v. Rogers*, 419 So. 2d 840 (La. 1982); *State v. Barton*, 759 S.W.2d 427 (Tenn. Crim. App. 1988). Thus, the determination of competence is an individualized, fact-specific decision. It is for this reason that expert testimony regarding a particular defendant's mental capabilities is necessary.

¶ 26. In Garfoot's case, there was expert testimony from two sources. Both experts applied the same criteria to Garfoot subject to their individual interpretations.[7] Dr. Jens, the court-appointed psychiatrist, testified that Garfoot was not competent to stand trial and that he would not likely gain competence within the statutory time limits. Dr. Spierer testified that Garfoot was "marginally competent" and that he may become "more competent" with the proper education. Bearing in mind the State's burden of proving by the

court was insufficient to raise bona fide doubt as to competence). *See also May v. State*, 398 So. 2d 1331 (Miss. 1981) (a 14-year old boy with an IQ of 70 was sentenced to 12 years for armed robbery); *Commonwealth v. Melton*, 351 A.2d 221 (Pa. 1976) (IQ of 69 alone did not give rise to reason to doubt defendant's competency); *State v. Crenshaw*, 205 N.W.2d 517 (Neb. 1973) (no doubt of defendant's competency even when known that the defendant "lacked normal mental ability and has some derangement of the mind.").

[7] To elicit information about a defendant's competence, many courts and experts rely on a 13-point checklist known as the "McGarry Scale" or "Competency to Stand Trial Instrument." The test involves an evaluation of the totality of the evidence. Both Dr. Jens and Dr. Spierer applied the McGarry criteria in evaluating Garfoot. *See State v. Shields*, 593 A.2d 986 (Del. Super. 1990), for a variety of factors upon which a court or an expert may rely.

greater weight of the credible evidence that Garfoot was competent to proceed, it was the job of the trial court to weigh the evidence and to determine if the State's case was more convincing than Garfoot's case.

¶ 27. The trial court determined that the evidence of competence did not outweigh the evidence of incompetence. The trial court accepted the defendant's assertion that the State may have met its burden of demonstrating Garfoot's ability to understand the proceedings, but it failed to prove that Garfoot has the ability to meaningfully assist counsel. Because the State failed to meet its burden of proof on the second prong of the test, the trial court necessarily found the defendant incompetent to stand trial pursuant to Wis. Stat. § 971.14(4)(b).

■

¶ 28. The trial court's determination was not clearly erroneous. The court was faced with testimony from one expert that Garfoot was not competent and testimony from another expert that Garfoot was only marginally competent. The trial court was in the best position to determine if the State's evidence was more convincing than the evidence presented by Garfoot. Applying the proper standard from *Dusky*, *Drope*, and Wis. Stat. § 971.13 to the evidence presented, the court determined that the State failed to overcome Garfoot's assertion of incompetence. Its decision that the State failed to meet its burden of proof was not clearly erroneous.

¶ 29. Garfoot is entitled to a fair trial; one that he can understand, and in which he can rationally participate while consulting rationally with counsel. Based on all the evidence, the court was entitled to conclude that Garfoot was not competent to be placed on trial. The trial court had before it opinions that were not directly

in conflict because the findings of both Dr. Jens and Dr. Spierer supported a conclusion that Garfoot was not competent to stand trial.

¶ 30. For the foregoing reasons, we reverse the court of appeals' decision. Because we find that the trial court is in the best position to weigh all the evidence necessary to make a competency determination, we hold that a court reviewing such a determination should apply a "clearly erroneous" standard of review. We further hold that because the state bears the burden of proving a defendant's competency when it is put at issue by the defendant, a defendant shall not be subjected to a criminal trial when the state fails to prove by the greater weight of the credible evidence that the defendant is capable of understanding the fundamental nature of the trial process and of meaningfully assisting his or her counsel as required by Wis. Stat. § 971.13(1), the codification of the *Dusky* test as further explained in *Drope*.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 31. SHIRLEY S. ABRAHAMSON, Chief Justice (*concurring*). I conclude, as does the majority, that the circuit court properly held that the State failed to prove that Garfoot was competent to stand trial. I write separately because I disagree with the majority's statement of the standard of appellate review.

¶ 32. The majority fails to recognize the proper standard of review because it fails to recognize the constitutional basis of the competency inquiry. A conviction of an incompetent person violates the right to a fair trial guaranteed by the due process clause of the

Fourteenth Amendment. *Pate v. Robinson*, 383 U.S. 375, 378, 385 (1966). The constitutional standard for competency to stand trial is enunciated in *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam), *Drope v. Missouri*, 420 U.S. 162 (1975), and Wis. Stat. § 971.13(1). The formulae set forth in *Dusky* and *Drope* are "open-textured"[1] and have been the subject of a great deal of scholarly and decisional analysis.[2] Many questions remain unanswered: What decision making abilities are encompassed by the *Dusky* formulation? To what extent do the *Dusky* tests include an accused's appreciation of the trial's significance and his or her own situation as a defendant in a criminal prosecution? What is the relation between the *Dusky* tests and legal rules relating to decision making by criminal defendants?[3]

¶ 33. I turn now to the standard of appellate review, an issue to which the parties devoted considerable effort in their briefing.[4] Because the proper

---

[1] Richard J. Bonnie, The Competence of Criminal Defendants with Mental Retardation to Participate in Their Own Defense, 81 J. Crim. L. & Criminology 419, 424 (1990); *State v. Debra A.E.*, 188 Wis. 2d 111, 124–26, 523 N.W.2d 727 (1994).

[2] ABA Criminal Justice Mental Health Standards, Standard 7–4.1, Commentary, at 168–175 (1989).

[3] *See generally* Richard J. Bonnie, The Competence of Criminal Defendants: Beyond *Dusky* and *Drope*, 47 U. Miami L. Rev. 539 (1993). Professor Bonnie also describes the dignity, reliability and autonomy rationales which underlie the prohibition against convicting an incompetent person. *Id.* at 551–54.

Garfoot's brief suggests a fourth rationale: convicting an incompetent person is inconsistent with the proper purposes of criminal punishment. Brief for Petitioner at 21.

[4] The standard of review was raised by Garfoot in his petition for review as a primary issue justifying review; he devoted 11 pages of his 27-page argument in his brief to this issue. The

standard is a prerequisite to our consideration of the substantive issues presented and because the parties fully briefed the issue, both the majority opinion and this concurrence devote substantial discussion to this issue.

¶ 34. I conclude that a determination of competency, a determination of constitutional fact, should be

State addressed the issue in 5 pages of its 29-page argument in its brief. Garfoot and the State do not agree on the appropriate standard of review.

Garfoot argues for a standard of review that benefits his position before this court, namely that the circuit court's determination that he was incompetent should not be disturbed unless clearly erroneous.

The State's position on the standard of review is more nuanced and the State asserts that its proposed standard of review is close to that set forth by the court of appeals.

The State distinguishes a circuit court's findings of historical fact which inform the competency determination from the legal standard of competency. "Appellate courts review the legal standard used by the trial court independently. . . .In addition, the trial court's failure to determine competency in the context of the case, consider modifications of the trial proceeding [for the benefit of an accused] and exercise independent legal judgment are legal errors and reviewed independently." Brief for State at 24.

The State proposes the following standard of review: "[W]here a trial court has relied upon relevant evidence and used the correct legal standard to make an independent determination, a competency determination should be upheld unless clearly erroneous." *Id.* at 24–25.

The State further asserts that its proposed standard has "the same objective" as the standard applied by the court of appeals, namely that an appellate court will "give weight to the trial court's decision, even though the decision is not controlling." *Id.* at 26–27. For the court of appeals' statement of the standard of review see note 5 below.

decided by this court independently of the decisions of a circuit court or court of appeals, yet benefiting from the analyses of those courts and the observational advantage of the circuit court. The court of appeals has concluded that the finding of competence is an intertwined finding of fact and law which an appellate court decides independently, giving weight to the circuit court's decision.[5]

¶ 35. The majority opinion concludes that the applicable standard of review is that applied to a finding of fact, namely whether the finding of competency is clearly erroneous. Wis. Stat. § 805.17(2). The majority opinion focuses on the circuit court's observational advantage, concluding that the circuit court "is in the best position to weigh all the evidence necessary to make a competency determination."[6] Majority op. at

[5] The court of appeals set forth the standard of review and its reasoning as follows:

> Our review of the trial court's ruling is therefore *de novo*. We nevertheless decline to make the competency determination without giving the trial court the opportunity to apply the proper standard to the facts. Competency determination is not a pure question of law. It is intertwined with the facts. When a trial court is required to make an intertwined finding of fact and law, we give weight to the trial court's decision, even though the decision is not controlling. *See Wassenaar v. Panos*, 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983).

*State v. Garfoot,* No. 94–1817-CR, unpublished slip op. at 9 (Wis. Ct. App. Nov. 9, 1995).

[6] The majority opinion also refers to the circuit judge's "superior ability to observe the defendant" as a basis for giving deference to the circuit court's competency determination. Majority op. at 224.

The circuit court's analysis of the defendant's conduct should be made part of the record as findings of historical fact.

The conclusion drawn, that the defendant is or is not competent, remains, however, a matter of constitutional fact to be

218, 229. The cases cited by the majority opinion to support its conclusion are not directly on point; none of them deals with appellate review of a circuit court's determination of competency to stand trial.[7] Furthermore, other Wisconsin cases have described competency determinations as essentially legal matters to be decided independently by an appellate court.[8]

¶ 36. I conclude that the competency determination is not a matter of historical fact only and should not be treated as an historical fact. The ultimate finding of competency, like a finding of voluntariness of a confession, is a finding of constitutional fact, and I therefore turn to our jurisprudence on appellate review of determinations of constitutional fact for the appropriate standard of review in this case. This jurisprudence focuses on the correct interpretation of controlling constitutional principles and thus requires an appellate court to make an independent determina-

---

determined independently by an appellate court regardless of the source of the underlying historical facts.

[7] Some cases cited by the majority deal with appellate review of a circuit court's determination of the existence of a reason to doubt competency; *State v. Pickens,* 96 Wis. 2d 549, 292 N.W.2d 601 (1980), deals with appellate review of a circuit court's determination of competency to represent oneself at trial.

[8] *See, e.g., In the Matter of Guardianship of Cheryl F.,* 170 Wis. 2d 420, 425, 489 N.W.2d 636 (Ct. App. 1992) (whether facts fulfill legal standard of incompetency justifying appointment of guardian is a question of law determined independently). Cf. *State v. King,* 187 Wis. 2d 548, 557, 523 N.W.2d 159 (Ct. App. 1994) (whether amnesiac defendant received a fair trial is question of constitutional fact to be determined independently by appellate court).

tion of the constitutional fact, that is the application of the constitutional principle to the historical facts.

¶ 37. There are sound reasons for different standards of appellate review. The standard for appellate review of historical facts should give great deference to the circuit court. The circuit court sees and hears the witnesses and is in a better position than an appellate court to gauge credibility. Appellate courts thus review circuit courts' findings of historical fact merely to determine whether they are clearly erroneous.

¶ 38. Similarly, appellate courts review circuit courts' discretionary decisions merely for erroneous exercise of discretion because the law commits a range of decisions to the discretionary judgment of the circuit court. Independent review, when inappropriate, can undermine confidence in the circuit courts and encourage meritless appeals.[9]

¶ 39. Nevertheless independent decision making by an appellate court is required in some circumstances. As Judge Mary Schroeder has pointed out, increasingly deferential review inappropriately permits an appellate court to tolerate a large margin of trial court error without ever making a close examination of the trial court's ruling. Mary M. Schroeder, *Appellate Justice Today: Fairness or Formulas, The Fairchild Lecture*, 1994 Wis. L. Rev. 9, 10, 20.

¶ 40. The standard for appellate review of an issue thus depends on a determination of whether an appellate court or a trial court is the more appropriate and competent forum to make the particular decision.[10]

---

[9] *Corroon & Black v. Hosch,* 109 Wis. 2d 290, 318–19, 325 N.W.2d 883 (1982) (Abrahamson, J., dissenting).

[10] *Corroon & Black,* 109 Wis. 2d at 314–322; *Nottelson v. ILHR Dept.,* 94 Wis. 2d 106, 113–18, 287 N.W.2d 763 (1980)

¶ 41. The court has distinguished matters of historical and constitutional fact for purposes of determining the appropriate standard of appellate review and has frequently decided matters of constitutional fact independently.[11] Sound reasons underlie our traditional commitment to independent determination of findings of constitutional fact.

¶ 42. The principal reason for independent appellate review of matters of constitutional fact is to provide uniformity in constitutional decision making.[12] In applying the skeletal constitutional rule, appellate courts flesh out the rule and provide guidance to litigants, lawyers and trial and appellate courts and achieve uniformity of application. The court clearly stated this goal when deciding that it would independently determine whether a confession met the constitutional standard of voluntariness.

---

(similar issue of standard of review in review of administrative agency decisions).

[11] *See, e.g., State v. Santiago,* 206 Wis. 2d 3, 17-18, 556 N.W.2d 687 (1996) (sufficiency of Miranda warnings); *State v. Turner,* 136 Wis. 2d 333, 344, 401 N.W.2d 827 (1987) (voluntariness of consent to search, voluntariness of confession, whether right to silence has been scrupulously honored); *State v. Hoyt,* 21 Wis. 2d 284, 305–06, 128 N.W.2d 645 (1964) (on motion for rehearing) (Wilkie, J., concurring) (voluntariness of confession) (citing *Culombe v. Connecticut,* 367 U.S. 568 (1961) (same)).

[12] See, for example, *State v. King,* 187 Wis. 2d at 557, in which the court of appeals concluded that an independent appellate review of a finding of constitutional fact that an amnesiac defendant received a fair trial was necessary because "[t]he reviewing court has the duty to apply constitutional principles to the facts found in order to ensure that the scope of constitutional protections does not vary from case to case."

Whether the defendant voluntarily made the confession is a matter of fact. However, it is a question of "constitutional" fact which must be independently determined by this court. . . .The scope of constitutional protections, representing the basic value commitments of our society, cannot vary from trial court to trial court. . . . Whatever the ultimate substantive dimension of these rights might be, they must be uniform throughout the jurisdiction. This can be accomplished only if one decision maker has the final power of independent determination.

*State v. Hoyt*, 21 Wis. 2d 284, 305–06, 128 N.W.2d 645 (1964) (Wilkie, J., concurring).[13]

¶ 43. A circuit court's finding that the historical facts meet the constitutional standard of competency to stand trial should, I believe, be determined independently by an appellate court. In making this determination an appellate court may draw upon the circuit court's reasoning and observational advantage, but the appellate court independently measures the facts against a uniform constitutional standard.

¶ 44. Professors Liebman and Hertz have urged appellate courts to use greater precision in their analyses of trial courts' competency determinations. James S. Liebman & Randy Hertz, 1 *Federal Habeas Corpus Practice and Procedure* 578–81 n.55 (2d ed. 1994). Although directed to the distinct issue of which state court determinations are entitled to a presumption of

---

[13] Although Justice Wilkie wrote in concurrence, this *Hoyt* language has been adopted by the court. *See, e.g., In the Interest of Isiah B.,* 176 Wis. 2d 639, 645–46, 500 N.W.2d 637 (1993) (reasonableness of search and seizure); *State v. Fry,* 131 Wis. 2d 153, 171, 388 N.W.2d 565 (1986) (search incident to arrest).

correctness for purposes of federal habeas corpus review,[14] their comments address our present concern.

> Precision in thinking about the process of assessing "competency" (whether it is competency to stand trial or to waive available legal remedies) also is helpful. That assessment can be viewed as essentially a two-part inquiry. The reviewing court first must evaluate the factual evidence regarding "competence," including the credibility of the psychiatric and lay assessments of the individual's mental state. Thereafter, the reviewing court must determine whether the basic facts proven by the evidence satisfy the applicable legal standard of competence. Once these two aspects of the competency assessment are distinguished, it becomes more clear that, although state court findings on the threshold factual issues generally are subject to a presumption of correctness, the subsequent determination (based on those facts) "[w]hether one is competent to stand trial under the Fourteenth Amendment [or competent to waive legal remedies] is a mixed question of law and fact" that is not subject to a presumption of correctness.

*Id.* at 580 (citations omitted).

¶ 45. For the reasons set forth I write separately.

---

[14] The federal courts' concern in this context is distinct from ours. The federal courts, trial and appellate, give deference to a broad range of state court fact findings under principles of federalism. The federal courts' determination of what fact findings are entitled to the presumption of correctness is not intended to parallel, nor to determine, the appellate standard of review of state trial court fact findings. Nevertheless, the federal courts' analyses may be instructive.

¶ 46. I am authorized to state that Justices Janine P. Geske and Ann Walsh Bradley join this opinion.

¶ 47. WILLIAM A. BABLITCH, J. (*concurring*). Although the concurrence presents a fairly persuasive case that the appellate standard of review should be independent of the decisions of a circuit court or court of appeals yet benefiting from the analyses of those courts, I do not join it. The issue has not been adequately briefed. In fact, both parties argue that the standard should be as stated in the majority opinion. At oral argument, the defendant discussed the standard of review for five minutes, arguing for a clearly erroneous standard, and stated that the State agreed with that position. In response, the State said nothing more than that it also advocated a clearly erroneous standard of review. Inasmuch as neither party supports the conclusion of the concurring opinion, this is not the appropriate case to depart from our precedent. Far better to wait until the issue is squarely joined and argued by two parties in adversarial position. Accordingly, I join the majority.