COURT OF APPEALS
DECISION
DATED AND FILED

April 9, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP432-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2020CF1317

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

BRIAN L. MENDRZYCKI,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Dane County: CHRIS TAYLOR, Judge. *Affirmed*.

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Brian L. Mendrzycki appeals a judgment convicting him of two felony counts, following a jury trial. Mendrzycki argues that his waiver of the right to counsel was invalid because the circuit court did not inquire into his awareness of the disadvantages of self-representation. Mendrzycki further argues that the court's initial finding that he was competent to represent himself is not supported by the record, and that the court should have required him to have counsel to represent him at trial because he showed himself to be incapable of presenting a prima facie defense. We reject these arguments and affirm the judgment.

## BACKGROUND

¶2 We present the procedural facts in detail because they are relevant to all of Mendrzycki's arguments.

¶3 Mendrzycki was charged with: stalking with the domestic abuse assessment; identity theft for financial gain; and identity theft to harm the victim's reputation. *See* WIS. STAT. §§ 940.32(2m)(c), 973.055(1), 943.201(2)(a) and (2)(c), 939.32 (2023-24).[1] The charges followed a series of actions that Mendrzycki allegedly took against his ex-girlfriend following the breakup of their romantic relationship.

¶4 Mendrzycki was represented by counsel at his initial appearance and at his bail hearing. Mendrzycki appeared without counsel at the preliminary hearing on September 30, 2020. When asked by the circuit court if it was his desire to waive his right to counsel, Mendrzycki replied, "At this time, yes." The

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

court conducted a colloquy with Mendrzycki, as required under *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997), to ensure the validity of Mendrzycki's waiver of the right to counsel. Specifically, the court said, "I need to make sure you understand that you do have the right, in this case, to an attorney. Do you understand that?" Mendrzycki replied, "I do understand that." The court also informed Mendrzycki that he had a constitutional right to represent himself. The court explained the advantages of having an attorney and the disadvantages of self-representation, pointing out that attorneys are trained in the law and that Mendrzycki is not. The court further explained that a lawyer would "have experience representing defendants in cases like these" and know what defenses to raise, what facts to look for, and "what evidence might be relevant." The court asked Mendrzycki if it was still his desire to represent himself, and he responded, "yes."

¶5    The circuit court explained to Mendrzycki the charges and the maximum imprisonment term and penalties that could be imposed, and Mendrzycki confirmed that he understood. When the court asked Mendrzycki to explain in his own words why he wanted to "proceed without an attorney," he said it was because he thought that the allegations in the complaint were exaggerated and that he had tried to explain that to his counsel, but that his counsel was not "convinced." Mendrzycki further said, "I decided to pursue this on my own, based on knowing the facts."

¶6    The circuit court also questioned Mendrzycki about his age and education. Mendrzycki said that he was 35 years old, had a bachelor's degree in civil engineering, and had been working as a civil engineer. When the court asked if anyone had made "threats or promises" to induce him to waive his right to counsel, Mendrzycki said, "No, your Honor." Mendrzycki also confirmed that he

understood that if he was indigent he could have counsel appointed for him. Mendrzycki further confirmed that he was not under the influence of any drugs, alcohol, or medication. Mendrzycki confirmed that he was "absolutely sure" that he wanted "to proceed today without counsel." At the end of the colloquy, the court found that Mendrzycki was knowingly, intelligently, and voluntarily giving up his right to counsel for the purpose of the preliminary hearing.

¶7 After the circuit court found probable cause that Mendrzycki committed a felony, it asked him if he would like to proceed to arraignment. Mendrzycki responded that he "would like to look into legal representation." The court urged him to do so and provided him with contact information for the State Public Defender so that he could inquire to see if he was eligible. The court adjourned the arraignment hearing for a later date, to give Mendrzycki time to look into obtaining counsel.

¶8 At the arraignment hearing on October 20, 2020, Mendrzycki appeared without counsel and said that it was his "desire to proceed with the arraignment without counsel." The circuit court asked whether Mendrzycki had made any efforts to obtain counsel, and he responded that he had "considered it," but that he decided he did not "need counsel."

¶9 At the arraignment, the circuit court again engaged in a colloquy with Mendrzycki regarding the waiver of his right to counsel. The court again explained the charges and the maximum penalties, and Mendrzycki confirmed that he understood. Mendrzycki confirmed that he understood that he had a constitutional right to a lawyer, that the State Public Defender would appoint a lawyer for him if he could not afford one, and that he might qualify for a program to hire counsel at a reduced rate. The court informed him that there were

advantages to having a lawyer who was "schooled" in the law, which Mendrzycki was not, since his professional training was in civil engineering. Echoing its earlier admonitions to Mendrzycki, the court explained, "An attorney will be aware of how to prepare your case in a way that might really ensure that you're more successful in your case" and that an attorney would be aware of defenses and "different procedural outcomes." The court asked, "Keeping all this in mind, is it still your choice to proceed unrepresented?" Mendrzycki responded, "At this time, yes, your Honor."

¶10 When the circuit court asked him to explain in his own words why he did not want an attorney, Mendrzycki said it was because he understood the facts of the case and because he was "the one that's most at risk" and had "the most to lose based on the outcome of this case." The court again inquired about Mendrzycki's educational background and age. The court asked whether he had any mental health issues affecting his decision, and whether he had consumed any alcohol, drugs, or other medications within the last 24 hours, and Mendrzycki said no to all. The court again confirmed that no threats or promises had been made to get Mendrzycki to give up his right to counsel. Following the colloquy, the court stated, "[M]y strong recommendation continues to be for you to seek counsel in your case, but for today I will find that you have knowingly, freely, and voluntarily waived that right." The court also found, again, that Mendrzycki was competent to represent himself.

¶11 On November 13, 2020, Mendrzycki signed and filed a written Waiver of Right to Attorney form. The form provided a detailed explanation of the charges, the maximum penalties, his right to counsel, the advantages of having an attorney, and the disadvantages of self-representation. Mendrzycki checked the box that indicated he had "read and understood" these disclosures. Mendrzycki

further attested that he had made the decision to represent himself "knowingly and voluntarily," without anyone making "promises or threats to" him or using "any influence, pressure, or force of any kind." At a status conference on November 24, 2020, the circuit court referenced the waiver form and asked Mendrzycki if it was still his desire to proceed without counsel, and Mendrzycki responded, "Yes, ma'am, it is."

¶12 At a motion hearing on March 16, 2021, the circuit court noted that it had previously "found repeatedly that [Mendrzycki was] knowingly and voluntarily representing" himself. The court again confirmed with Mendrzycki that his intent was to represent himself, that he knew he had a right to an attorney, and that no one had threatened him or promised him anything to give up that right.

¶13 At a status hearing on February 1, 2022, the State informed the circuit court of the terms of its last, best offer to reach a negotiated plea agreement with Mendrzycki. The court engaged in a colloquy with Mendrzycki to make sure that he understood the terms of the State's offer, and also that he understood the nature of the charges he was facing if he proceeded to trial, and the maximum penalties in the event of convictions. Mendrzycki said he understood but that he was "electing to plead not guilty" and go to trial. The court asked Mendrzycki if he still wanted to represent himself at trial and he responded, "That is correct, your Honor." The court again discussed the "perils" of self-representation, including the fact that Mendrzycki would be responsible for conducting any legal research. Mendrzycki confirmed that he understood.

¶14 At a pretrial hearing on February 7, 2022, the circuit court again asked Mendrzycki if it was his "desire to proceed representing" himself at trial. Mendrzycki confirmed that he still wanted to represent himself and told the court

that he understood he had a "[c]onstitutional [r]ight to an attorney" and that, as to his trial, he wanted to "waive that right." The court continued the trial until April to give Mendrzycki time to prepare.

¶15 On April 4, 2022, the trial commenced. At the outset, the circuit court asked Mendrzycki whether it was still his desire to represent himself. He replied, "Yes, your Honor." The State called four witnesses at trial, all of whom Mendrzycki cross-examined thoroughly.

¶16 After the State rested its case, the circuit court informed Mendrzycki that he had a constitutional right to testify at trial and also a constitutional right to remain silent, and that he had a decision to make. Mendrzycki told the court that he wanted to testify. The court then engaged in a colloquy with him and, following the colloquy, found that he made his decision to testify knowingly, voluntarily, and intelligently. Mendrzycki proceeded to testify on his own behalf.

¶17 The jury found Mendrzycki guilty of stalking with electronic access and of attempted identity theft for financial gain. The jury found Mendrzycki not guilty of attempting to commit identity theft for purposes of reputational harm. The circuit court entered a judgment convicting Mendrzycki of the stalking count and identify theft count. The court withheld sentence and imposed three years of probation.

## DISCUSSION

¶18 Mendrzycki argues that the circuit court failed to inquire into his awareness of the disadvantages of self-representation and that, therefore, his waiver of the right to counsel was invalid. To establish a valid waiver of the right to counsel, the circuit court must conduct an on-the-record colloquy to ensure that

the defendant: "(1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against [the defendant], and (4) was aware of the general range of penalties that could have been imposed on [the defendant]." *Klessig*, 211 Wis. 2d at 206. If these conditions are not satisfied, the circuit court must deny the request to proceed pro se; to do otherwise deprives the defendant of the right to counsel. "Whether a defendant has knowingly, intelligently and voluntarily waived [the defendant's] right to counsel requires the application of constitutional principles to the facts of the case, which we review independent of the circuit court." *Id.* at 204.

¶19    Mendrzycki argues that, as to the second requirement for a colloquy under *Klessig*, 211 Wis. 2d at 206, the circuit court did not adequately explain the pitfalls of self-representation. Specifically, Mendrzycki asserts that, at the preliminary hearing, the court did not at any time use the particular word "disadvantages." This is not accurate. The court at one point said, "We talked a little bit about the advantages that a lawyer can provide to you, and we talked about the disadvantages of self-representation and that you just don't have the legal background, the experience or the knowledge." In addition to this statement, the court explained at the preliminary hearing that attorneys are trained in the law and that Mendrzycki is not. The court explained that, if self-represented, Mendrzycki would be giving up the advantage of having a lawyer that would "have experience representing defendants in cases like th[is]" and would know what defenses, facts, and evidence might be relevant. The court asked, "Keeping that in mind, do you still desire to represent yourself?" Mendrzycki answered in the affirmative. Having reviewed the transcript of the preliminary hearing and

considering it as a whole, we reject Mendrzycki's argument that the court did not adequately explain to him the pitfalls of self-representation.

¶20 Mendrzycki also asserts that, at the November 24, 2020 status conference, when reviewing the written Waiver of Right to Attorney form, the circuit court did not discuss the "disadvantages" section of the form with him or confirm that he had read or understood it. However, Mendrzycki cites no legal authority suggesting that the court had an obligation to do so. By the time of the November 24, 2020 status conference, the court had already engaged in two on-the-record colloquies with Mendrzycki regarding his right to counsel and his decision to waive that right, at the preliminary hearing and at the arraignment. Moreover, the waiver form provides on its face an explanation of the charges and penalties, the right to counsel, the advantages of having an attorney, and the disadvantages of self-representation. Mendrzycki checked boxes indicating that he had "read and understood" this information and attesting that he had made the decision to represent himself "knowingly and voluntarily," without anyone making "promises or threats to" him, using "any influence, pressure, or force of any kind," or telling him that he "should not ask for an attorney." Mendrzycki signed and dated the form. At the November 24, 2020 status conference, the court acknowledged receipt of the completed waiver and asked Mendrzycki if it was still his "desire to proceed without counsel today." Mendrzycki said yes.

¶21 In addition to the colloquies regarding Mendrzycki's waiver of counsel that occurred at the preliminary hearing and at the arraignment, the circuit court confirmed on the record at multiple later proceedings that Mendrzycki still desired to represent himself and determined that he was competent to do so. The court's exchanges with Mendrzycki are described in detail above, and we will not repeat them here. In sum, we are not persuaded that the court failed to inquire into

9

Mendrzycki's awareness of the disadvantages of self-representation, and we are satisfied that the record establishes that the court had a strong record to determine that his choice to proceed pro se was knowing, intelligent, and voluntary.

¶22 Mendrzycki next argues that the circuit court erred in finding that he was competent to represent himself. A circuit court's determination of whether a defendant is competent to proceed pro se is reviewed on appeal under what is "'essentially a clearly erroneous standard of review.'" *State v. Marquardt*, 2005 WI 157, ¶21, 286 Wis. 2d 204, 705 N.W.2d 878 (quoting *State v. Garfoot*, 207 Wis. 2d 214, 224, 558 N.W.2d 626 (1997)). We will uphold a circuit court's determination that a defendant is or is not competent to represent himself unless that determination is "'totally unsupported by the facts apparent in the record.'" *Garfoot*, 207 Wis. 2d at 224 (quoted source omitted). To determine competency for self-representation, the court considers "factors such as 'the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect [the defendant's] ability to communicate a possible defense.'" *Klessig*, 211 Wis. 2d at 212 (quoting *Pickens v. State*, 96 Wis. 2d 549, 569, 292 N.W.2d 601 (1980), *overruled on other grounds by Klessig*, 211 Wis. 2d 194).

¶23 Mendrzycki argues that the circuit court erred in two respects when it found him competent to represent himself. First, he contends that the court failed to inquire into his mental health and emotional state. Second, he argues that the court's finding of competency did not meet the standard of competency for self-representation. *See State v. Imani*, 2010 WI 66, ¶36, 326 Wis. 2d 179, 786 N.W.2d 40 ("Determining whether a defendant is competent to proceed pro se is a higher standard than determining whether a defendant is competent to stand trial.").

¶24 As to the first aspect, Mendrzycki argues that the circuit court "failed to inquire into [his] emotional fixations on irrelevant matters," his difficulties communicating in court, and "his mental health issues." These arguments are without merit. The record reflects that the court did inquire about Mendrzycki's mental health, asking him explicitly if he had any "mental-health issues that [affected his] decision" to represent himself, and he responded that he did not. Relevant to Mendrzycki's emotional and mental state, the court asked on multiple occasions if he had consumed alcohol or drugs within the last 24 hours or had been threatened or promised anything to give up his right to counsel.

¶25 In inquiring whether a defendant is competent to self-represent, the circuit court is to concentrate on whether the defendant appears able to understand the proceedings. *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993). A court may deny a defendant the right to self-represent only in narrow circumstances, such as when the defendant has a serious mental illness that interferes with the defendant's ability to self-represent, even though the defendant is competent to stand trial if assisted by counsel. *Indiana v. Edwards*, 554 U.S. 164, 178 (2008). In this case, the court was not presented with evidence that Mendrzycki had a serious mental illness that interfered with his ability to self-represent. The circuit court "'is in the best position to observe the defendant, [the defendant's] conduct and … demeanor and to evaluate [the defendant's] ability to present at least a meaningful defense.'" *Imani*, 326 Wis. 2d 179, ¶37 (quoted source omitted). Here, as reflected in the summaries above, the court inquired about Mendrzycki's mental health and emotional state and found, based on his answers and the court's observations of him, that he understood the proceedings and was competent to represent himself at trial. Because the court's finding is not "'totally unsupported by the facts apparent

11

in the record,'" it must be upheld. *See Garfoot*, 207 Wis. 2d at 224 (quoted source omitted).

¶26    We turn next to Mendrzycki's argument that the circuit court's finding of competency fails to meet Wisconsin's standard of competence for self-representation, which is a higher standard than the minimum requirements for competency to stand trial. *See Imani*, 326 Wis. 2d 179, ¶36.  We reject this argument because the record shows that the court's inquiry into Mendrzycki's competency to represent himself was properly focused on whether he was able to understand the proceedings.  *See Godinez*, 509 U.S. at 401 n.12.  The court's unambiguous and patient colloquies with Mendrzycki included the court ascertaining that he was 35 years old, had a civil engineering degree from the University of Wisconsin, had been working as a civil engineer, and had not been threatened or promised anything to give up his right to counsel.  Each of these facts supports the court's determination that Mendrzycki understood the proceedings and was knowingly, voluntarily, and intelligently exercising his right to represent himself.  The court did not err in finding that Mendrzycki was competent to proceed pro se.

¶27    Mendrzycki also argues that the circuit court should have required him to have counsel, and appointed counsel for him, because it was "painfully obvious" that he was not competent to represent himself.  This court has already concluded that the circuit court did not err in finding that Mendrzycki was competent to proceed pro se, and we will not further elaborate on that conclusion. In addition, the record contradicts Mendrzycki's argument that he was incapable of presenting a prima facie defense.  Mendrzycki demonstrated his understanding of the trial proceedings by extensively cross-examining each of the State's witnesses at trial.  Mendrzycki also successfully defended himself against one of

the three charges, such that he was acquitted on the count of attempted identity theft for purposes of reputational harm. We reject Mendrzycki's contention that he showed himself at trial to be so inept that the court should have stepped in and appointed counsel for him. A defendant may not be forced, constitutionally, to have representation by counsel when the defendant has voluntarily and intelligently elected to exercise the right of self-representation. *Faretta v. California*, 422 U.S. 806, 807 (1975). Mendrzycki fails to show that the court should have required him to have counsel at trial.

## CONCLUSION

¶28 For all the foregoing reasons, we uphold the circuit court's determinations that Mendrzycki was competent to represent himself and that his waiver of the constitutional right to counsel was knowing, voluntary, and intelligent.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.