# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2013AP1228-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent-Petitioner, |
| |    v. |
| | Jimmie Lee Smith, |
| |         Defendant-Appellant. |

REVIEW OF A DECISION FO THE COURT OF APPEALS
(Reported at 357 Wis. 2d 582, 855 N.W.2d 422)
(Ct. App. 2014 – Published)
PDC No. 2014 WI App 98)

| | |
|---|---|
| OPINION FILED: | April 7, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 6, 2015 |
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | David L. Borowski |
| JUSTICES: | |
|   CONCURRED: | ZIEGLER, J. concurs |
|   DISSENTED: | ABRAHAMSON, J., joined by BRADLEY, A. W., J. dissent |
|   NOT PARTICIPATING: | BRADLEY, R. G., J. did not participate |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Christine A. Remington*, assistant attorney general, with whom on the briefs was *Brad D. Schimel*.

For the defendant-appellant, there was a brief by *John T. Wasielewski*, and *Wasielewski & Erickson*, Milwaukee, and oral argument by *John T. Wasielewski*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP1228-CR
(L.C. No. 2009CF56)

STATE OF WISCONSIN                   :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent-Petitioner,**

**v.**

**Jimmie Lee Smith,**

      **Defendant-Appellant.**

**FILED**

**APR 7, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1    PATIENCE    DRAKE    ROGGENSACK,    C.J.    We    review    a
published decision of the court of appeals[1] that reversed the
Milwaukee County Circuit Court's[2] denial of defendant Jimmie Lee
Smith's (Smith) postconviction motion to vacate the judgment of
conviction.

¶2    Smith was convicted of second-degree sexual assault,
contrary to Wis. Stat. § 940.225(2)(a) (2013-14),[3] and sentenced

---

[1] State v. Smith, 2014 WI App 98, 357 Wis. 2d 582, 855 N.W.2d 422.

[2] The Honorable David Borowski of Milwaukee County presided.

[3] All further references to the Wisconsin statutes are to the 2013-14 version, unless otherwise indicated.

to 25 years of initial confinement and 15 years of extended supervision. Subsequently, Smith filed a postconviction motion to vacate the judgment of conviction, alleging that he was incompetent at the time of trial and sentencing. The postconviction court appointed experts to evaluate Smith and conducted a retrospective competency evaluation. After an evidentiary hearing, the postconviction court found that Smith had been competent to stand trial and be sentenced.

¶3 The court of appeals reversed, and the State petitioned for review. In its petition for review, the State raises the following issues: (1) whether the court of appeals improperly weighed evidence rather than deferring to the postconviction court; (2) whether the court of appeals applied an incorrect standard of review to the circuit court's finding that Smith was competent at trial and sentencing, which finding the State asserts is not clearly erroneous; and (3) whether the court of appeals exceeded its constitutional authority by engaging in improper fact finding.

¶4 We conclude that the court of appeals failed to apply the clearly erroneous standard of review to the postconviction court's finding of competency and improperly weighed evidence rather than giving deference to the postconviction court's finding. Reviewing the evidence under the proper standard, we conclude that the postconviction court's finding that Smith was competent to stand trial and be sentenced is not clearly

erroneous. Accordingly, we reverse the decision of the court of appeals.[4]

## I. BACKGROUND

¶5 On the night of October 2, 2007, Smith followed the victim, A.H., out of a bar, beat and raped her. During the course of the attack, Smith hit A.H. in the face, punched her, and slammed her head against the concrete until she was unconscious. After A.H. regained consciousness, she went to a nearby house and asked the occupants to call 911.

¶6 On January 7, 2009, the State charged Smith with second-degree sexual assault, a violation of Wis. Stat. § 940.225(2)(a). Prior to trial, Smith made inculpatory statements to police, and the circuit court held a Miranda[5]-Goodchild[6] hearing. At the hearing, the circuit court conducted the following colloquy with Smith:

> THE COURT: . . . Mr. Smith, do you understand that you have the right to challenge both——well, challenge any statements that you made to the police on two grounds. The first ground is that you did not receive your Miranda warnings; do you understand that?

---

[4] Because we conclude that the court of appeals improperly weighed evidence and applied an erroneous standard of review, we do not address whether the court of appeals engaged in improper fact finding. 118th St. Kenosha, LLC v. DOT, 2014 WI 125, ¶7, 359 Wis. 2d 30, 856 N.W.2d 486; Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15; Waters v. Pertzborn, 2001 WI 62, ¶14, 243 Wis. 2d 703, 627 N.W.2d 497.

[5] Miranda v. Arizona, 384 U.S. 436 (1966).

[6] State ex rel. Goodchild v. Burke, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

[SMITH]: Yes.

THE COURT: The second ground would be that the statement was not voluntary; do you understand that?

[SMITH]: Yeah.

THE COURT: Voluntariness goes to police impropriety or coercion only; do you understand that?

[SMITH]: Yes.

THE COURT: Do you wish to have a motion on either of those two issues?

[SMITH]: I don't think so, Judge.

THE COURT: You don't think so or you don't want to?

[SMITH]: No.

THE COURT: All right. Have you had enough time to talk to your lawyer?

[SMITH]: Yes.

THE COURT: Do you believe that's in your best interest to proceed in this manner?

[SMITH]: Yes.

THE COURT: Do you understand that your lawyer could argue the fact that you may have been confused, which may go to the weight of the confession?

[SMITH]: Yes.

THE COURT: But certainly does not go to the admissibility; do you understand that?

[SMITH]: Yes.

¶7 A jury trial began on October 12, 2009,[7] where Smith was represented by Attorney Stephen Sargent. After the State

_____

[7] The Honorable Jeffrey A. Conen of Milwaukee County presided.

4

presented its case-in-chief, the circuit court conducted another colloquy with Smith:

THE COURT: . . . Mr. Smith, you have the right to testify in this matter, you have the right to remain silent. Do you understand that?

[SMITH]: Correct.

THE COURT: You make the choice yourself, sir. Do you understand that?

[SMITH]: Correct.

THE COURT: Have you had enough time to talk to your lawyer?

[SMITH]: Yes.

THE COURT: What's your choice?

[SMITH]: My choice was to waive it.

THE COURT: I'm sorry?

[SMITH]: Waive it.

THE COURT: To waive it? So do you want to testify or do you not want to testify?

[SMITH]: I don't want to testify.

THE COURT: All right. And has anyone forced you to do this?

[SMITH]: No.

THE COURT: Do you believe it's in your best interest?

[SMITH]: Yes.

THE COURT: And are you making this choice freely and voluntarily?

[SMITH]: It's freely and voluntarily.

5

¶8 Smith was convicted on October 14, 2009. Smith's sentencing hearing was held on December 11, 2009, where he continued to be represented by Attorney Sargent. At sentencing, the State recommended the "maximum penalty of 25 years' confinement followed by 15 years' extended supervision" due to Smith's numerous previous convictions and pattern of violent, sexual assault. Prior to imposing sentence, Smith made the following statement:

> [SMITH]: Today I want to say in court that I have been through a lot in my life. I help peoples and I got——I got this. I bail peoples out of jail, I got this. I let peoples stay in my house, I got this. I let peoples eat at my house, I got this.
>
> Today [A.H.], I don't know what she lookin' for out of me and why is she comin' to court like this? What it is that she want from me? She in love with me or something? Sayin' that she haven't took a shower since this happened to her? What is wrong with her? I let bygones be bygones. Peoples done throw salt on me every day, every day out there on the street. Peoples took money from me at the court sale, at the courthouse. But I let it ride, they wouldn't even give it back. I let it go.
>
> I sit up North, did time behind bailin' this girl, [], out of jail in Chicago, Illinois for child neglect, because I went to court the day that she was——she was in court, and I went and bailed her out of jail. And then I hear all of this about me? And she supposed to have been back in court. She never go back. She never go back for her——for——to get her bail back. But I'm the one who had to sign her bail as being right to this day.
>
> I am very, very sorry that I even helped this lady. But these ladies are sayin' things like this about me. And she ain't white like her, the lady that——that I bailed out of jail, she's black. And her daughter, I looked out for them when they was starvin' to death, livin' out on the street corner. I'm out

6

here tryin' to make a living every day at my job workin', lost my job behind all of that, feedin' them, lettin' them stay in the house, ended up getting' in trouble with my landlord by buyin' air-conditionin' and things without asking his permission, could I have it in my apartment with the rent and——and included with the lights.

And this is the thanks I get out of it? 12 years like I murdered someone out there on the street? I sat in there 12 years for bailin' her out of jail. I didn't see all these troubles until I bailed her out of jail. Helped her and her family.

And then my brothers, them too, I even brought them to my house and helped them. When I lived with them, they couldn't even pay the light bill. Wouldn't even pay the light bill. The landlord was lettin' them work off his job to pay the rent. And told him to switch the lights in his name. He didn't even do it.

So by me handin' over parts of my Quest card, because I never gained footage after being locked up after bailing [her] out of jail for being convicted of child neglect, for $200 I had to put my name to that, and now she's on the run and I get all of this out of that? She never——She ain't——wouldn't go back to court because I just see her last year. She worked at the same company as I did, I see her there on the 27th and National. She there.

And then this other lady back in——[], she don't even know her name. She callin' me every day. I'm over by my——my——my livin' relatives after I got out of jail, never gained footage, never got a job, never got back to my feet. I know nobody in this courtroom don't care.

And——And at that one time I didn't care about my $40 that I gave away to the courthouse, I gave away $40 for a marriage license fee and I couldn't even get it back from the courts. And this happened before all of this stuff about bailin' [her] out of jail. And the courts seemed like this is all my fault? This is not all my fault.

7

I also talked to [], I sent her a letter last year.  And then [], I went back to her house after I got out of jail and she still wasn't workin' out right.  And then we——I ended up gettin' shot behind all this.  I got a bullet hole through my body and laid up at Froedtert Hospital for almost six months out there fightin' for my life because of these people that hates on me.

I can prove it to you that I got the shot, it is right here in my stomach.  I got shot, laid up almost 90 days, I was fightin' for my life at Froedtert because I bailed her out.

[ATTORNEY] SARGENT:  Excuse me, your Honor.  (Brief discussion off the record.)

[SMITH]:  It's got to be out there.  I need to put this out there on the table.

THE COURT:  Well, we're going to have to put an end to this because none of this really has a whole lot to do——

[SMITH]:  I know it don't have a whole lot, but, here, I didn't set up in jail and then I got out and then I couldn't even stay on my money, and then I get on SSI and stay on it for like four or five checks and then they cut it off.  I get these lawyers $2,300 to represent me.  They——I still ain't on for all of this pain and sufferin' that I'm goin' through for not lookin' out for my life after I got my finger injured by my family work helpin' this guy gettin' on the job there.  And he didn't even have the decency enough to say I will invite you out to dinner for lookin' out for me.  He didn't even have the decency to do that for me.

And then [], she come over to my house, I got the settlement from the——from my gunshot, I buy a car, I take her down there to see her family, she want to run both of us off the highway, kill us both.

THE COURT:  All right.  Well, Mr. Smith, none of this really has anything to do with——

[SMITH]:  But this has got a lot to do with this case.

8

THE COURT:  It really doesn't.  So we're going to cut it off if you are not going to get to the point.

[SMITH]:  The point is, if you want to hear what my goal are, my goal is to get out of here to get back to work and to get my Social Security.  That's it.  You don't want to hear what I gotta say but you want to sentence me, though.  You want to give me the maximum time, say that I'm a mean person.  But I'm not mean. This place is mean.  They took money from me here. And then when I write a letter to my family about it back in Chicago telling them how I could stay in Wisconsin with a stolen car from Chicago here, how could I stay here, how could I stay here, I had to sign my letters that I written to them because these peoples here took my——took my marriage license fee and then they took my adoption fee.  Now, that is not fair to me.  You guys are not being fair.

THE COURT:  We're done.

[SMITH]:  I'm done but y'all——I just want to address—— When I want to talk, y'all don't want to hear the truth.

THE BAILIFF:  Now you are done.

The circuit court accepted the State's recommendation and sentenced Smith to 25 years of initial confinement followed by 15 years of extended supervision.

¶9  On June 18, 2010, Smith's postconviction counsel, Attorney John T. Wasielewski, filed a postconviction motion and moved for a determination of whether Smith was presently competent to assist in postconviction proceedings.  On September 13, 2010, a competency hearing was held, and the postconviction court[8] heard testimony from Dr. Deborah Collins

---

[8] The Honorable Jean A. DiMotto of Milwaukee County presided.

9

who opined that Smith was not competent to proceed, but that he was likely to regain competency within a reasonable period of time. Given this testimony, the postconviction court set another hearing date for December 10, 2010; however, prior to this hearing, Dr. John Pankiewicz evaluated Smith, and opined that Smith remained incompetent, but may regain competency within a reasonable period of time. The postconviction court again scheduled a follow-up hearing for March 14, 2011 where it ultimately found that Smith was incompetent to proceed with postconviction proceedings and was unlikely to regain competency within a reasonable period of time. The postconviction court also appointed a guardian ad litem, Attorney Scott Phillips, to serve on Smith's behalf.

¶10 On September 30, 2011, Attorney Wasielewski filed a postconviction motion to vacate Smith's judgment of conviction, alleging that Smith had been incompetent at the time of trial and sentencing. Smith sought to proceed under three theories of recovery. First, Smith alleged "procedural incompetency," arguing that at the time of trial and sentencing, the circuit court had reason to doubt his competency and, therefore, should have sua sponte held a competency hearing. Second, Smith alleged ineffective assistance of counsel, arguing that trial counsel, Attorney Sargent, had reason to doubt his competency and, therefore, should have moved for a competency hearing. Third, Smith alleged "substantive competency," simply arguing that he was convicted and sentenced while incompetent.

¶11 The postconviction court[9] ordered Dr. Collins and Dr. Pankiewicz to conduct retrospective competency evaluations to aid in determining whether Smith had been competent at the time of trial and sentencing, which occurred in October and December of 2009, respectively. On August 2, 2012, the postconviction court held a competency hearing where both doctors testified for Smith.

¶12 Dr. Pankiewicz testified that, for purposes of his retrospective competency evaluation, he submitted a report dated February 27, 2012. The report indicated that Dr. Pankiewicz had reviewed various sources of information prior to rendering his opinion. These sources included: his prior examinations of Smith, which occurred on December 7, 2010 and March 3, 2011; Dr. Collins' competency report dated July 21, 2010; Smith's records from the Milwaukee County Jail, the Department of Corrections, and the Wisconsin Resource Center; and portions of the sentencing transcript.

¶13 Dr. Pankiewicz testified that Smith had a "substantial record of mental illness going back at least 20 years," typically diagnosed as "psychotic disorder or schizophrenia." Dr. Pankiewicz also testified that Smith's jail records played a major role in developing his opinion because they "contained observations of Mr. Smith during that period" and were the most contemporaneous records available. The jail records indicated

---

[9] The Honorable David Borowski of Milwaukee County presided over the remaining postconviction proceedings.

11

that he "exhibit[ed] unusual behavior at times; requiring placement in the psychiatric special needs unit at the jail. He was frequently viewed as rambling in his communications and although prescribed anti-psychotic medications, typically refused to cooperate with said treatment." Comparing the jail records to Smith's sentencing allocution, Dr. Pankiewicz stated that "Smith was demonstrating rambling speech, which was similar to observations made by staff at the jail. So I believe that was [] further evidence that he was symptomatic at the time."

¶14 Based on all of the foregoing, Dr. Pankiewicz opined that "there [was] substantial cause to doubt [Smith's] competency to stand trial in October 2009 [and be sentenced in December 2009]."

¶15 During cross examination, Dr. Pankiewicz testified that out of approximately 2,000 competency evaluations that he performed during his career, "less than 10" of them were conducted retrospectively. Dr. Pankiewicz also testified that, although he had reviewed the transcript of the sentencing allocution, he had not reviewed the transcripts of Smith's trial colloquies; nor had he spoken with Smith's trial counsel, Attorney Sargent. Finally, Dr. Pankiewicz admitted that his retrospective competency evaluation, rendered nearly three years after Smith's trial and sentencing, was not as strong as it would have been had he been able to conduct a contemporaneous examination in 2009.

¶16 Dr. Collins also testified at the competency hearing. For purposes of her retrospective evaluation, Dr. Collins

12

submitted a report dated September 16, 2011. Dr. Collins' report indicated that she similarly relied on various sources including: her previous examinations of Smith; Dr. Pankiewicz's previous examinations of Smith; Smith's clinical and medical records; Smith's sentencing allocution transcript. Dr. Collins testified that Smith's records revealed that, "as early as 1993, Mr. Smith had been identified with a psychotic disorder and, in fact, at that time was the subject of civil commitment proceedings in a court order for medication to treat his mental illness." Dr. Collins also testified that the totality of Smith's records "well-substantiates a diagnosis of a psychotic disorder, and that [Smith], as early as March of 2009, was actively symptomatic."

¶17 Dr. Collins ultimately opined that, "to a reasonable degree of professional certainty," Smith was incompetent at trial and sentencing. However, Dr. Collins also admitted that, out of hundreds of competency evaluations she had conducted, she estimated that only four had been conducted retrospectively. Dr. Collins also stated that she "frame[d] [her] opinion carefully because, of course, it's a retrospective evaluation and reaching that ultimate conclusion is challenging, at best, because the data is incomplete" without a contemporaneous examination of Smith. According to Dr. Collins, a contemporaneous examination typically is the most important component of a competency evaluation.

¶18 On September 14, 2012, the postconviction court continued the competency hearing. Smith's trial counsel,

13

Attorney Sargent, testified in regard to Smith's competency. Attorney Sargent said that he met with Smith approximately seven times throughout his representation. Attorney Sargent said he never had any reason to doubt Smith's ability to understand the proceedings. Attorney Sargent further testified that Smith was able to assist in his defense both at trial and sentencing.

¶19 For example, Attorney Sargent testified that Smith denied the allegations of sexual assault, stating that he and A.H. had consensual sex in an alley. Therefore, Attorney Sargent and Smith agreed to go forward with a consent defense at trial. Attorney Sargent and Smith also agreed that Smith would not testify at trial because Attorney Sargent advised Smith that he "would [not] come off well as a witness to the jury." Additionally, Attorney Sargent testified that Smith understood and assisted him during discussions of plea negotiations, as well as jury selection. Specifically, during jury selection, Attorney Sargent informed the circuit court that Smith wanted "Juror 17 [to] be struck. It's by his request." The circuit court responded, "Right. We talked about that yesterday, and I said that that would be fine assuming that all the jurors would be back today. It's my understanding they are all here." Attorney Sargent then addressed Smith by asking, "I discussed that with you; is that correct?" Smith responded, "Yes."

¶20 With respect to sentencing, Attorney Sargent said that Smith was very animated and angry, and that he had advised Smith to remain calm. He admitted that Smith's sentencing allocution had little relevance and was not helpful to the court in

sentencing. However, he did not view Smith's statements as indicating a mental health issue but, rather, an anger issue.

¶21 On May 2, 2013, the postconviction court rendered its decision. In so doing, the postconviction court acknowledged the competence and experience of both Doctors Pankiewicz and Collins; however, it noted the significant period of time that had elapsed and that the doctors' retrospective opinions "could not possibly be as solid" as if they had had contemporaneous contact with Smith. Additionally, the postconviction court noted that Attorney Sargent had approximately 25 years of experience and "did not have any reason to question his client's competence during the proceedings." Moreover, the postconviction court gave credence to trial judge, Jeffrey A. Conen's, considerable experience on the bench, that he conducted multiple colloquies with Smith, and that he had never raised a concern about Smith's competency at trial or sentencing.

¶22 The postconviction court made the following findings with respect to Smith's competency at trial and sentencing:

> Dr. Pankiewicz and Dr. Collins, again, I think they are both very good doctors. They are both more than competent in total, but the competency determination, ultimately, is not theirs. It's a legal determination. It's not a determination to be made by doctors.
>
> In a nutshell, I do not think that there's a basis to vacate the sentence or the judgment of conviction, I guess the judgment of conviction first or the sentence in this case. I do not believe and do not find that Mr. Smith was incompetent at the time of his trial and sentencing. I am persuaded by the State's argument, the State's brief, which I'm

15

adopting, the testimony from Mr. Sargent more than and over the testimony from the two doctors.

The testimony, while I respect it from the two doctors, I think is not enough in this case for me to believe that the defendant was not competent at the time of his trial and sentencing. In fact, I believe he was competent at the trial and sentencing.

I think the testimony from Mr. Sargent, who was there, who dealt with the defendant, who met with the defendant on multiple times, who sat in court with him multiple times, who discussed this case with him multiple times, is more persuasive and more relevant to me in making this additional determination.

Again, competency, obviously is a legal decision. It's a judicial determination. It's not, as the State points out, a medical determination.

So I'm denying the defense motion. I think they have not met their burden.

¶23 On September 16, 2014, the court of appeals reversed the postconviction court's decision. State v. Smith, 2014 WI App 98, ¶26, 357 Wis. 2d 582, 855 N.W.2d 422. The court of appeals purported to apply the following standard of review: "'The [postconviction] court's determination of whether there is reason to doubt the defendant's competence and order an examination is disturbed on appeal only if the [postconviction] court exhibited an erroneous exercise of discretion or if the [postconviction] court decision was clearly erroneous.'" Id., ¶19 (alterations in original) (quoting State v. Garfoot, 207 Wis. 2d 214, 223-24, 558 N.W.2d 626 (1997)).

16

¶24 After articulating two different standards of review, an erroneous exercise of discretion and clearly erroneous decision,[10] the court of appeals said:

---

[10] We note that it has not been uncommon in reviews of competency determinations for courts to narrate the standard of review as whether "the trial court exhibited an erroneous exercise of discretion or if the trial court decision was clearly erroneous," citing State v. Garfoot, 207 Wis. 2d 214, 223-24, 558 N.W.2d 626 (1997). However, in State v. Byrge, 2000 WI 101, 237 Wis. 2d 197, 614 N.W.2d 477, we explained that Garfoot decided that "competency to stand trial must be reviewed under the deferential clearly erroneous standard." Byrge, 237 Wis. 2d 197, ¶33.

We note that the cite to Garfoot often is made without acknowledging that Garfoot addressed two different determinations that have two different standards of review. First, Garfoot was concerned with determining whether there was "reason to doubt" that Garfoot was competent, such that Wis. Stat. § 971.14 is engaged and experts are appointed to evaluate him and hold a competency hearing. Garfoot, 207 Wis. 2d at 223-24. And second, Garfoot was concerned with reviewing whether the circuit court's finding on competency was clearly erroneous. Id. at 224.

In State v. McKnight, 65 Wis. 2d 582, 595-96, 223 N.W.2d 550 (1974) (which is cited in Garfoot), we explained that the circuit court has discretion to refuse to conduct a competency hearing when defendant does not provide threshold of facts sufficient to raise the circuit court's doubt about defendant's competency to proceed. Accordingly, in McKnight, we held that "reason to doubt" competency is reviewed under the erroneous exercise of discretion standard. Id.

(continued)

17

> [T]he standard on review is whether the whole record reveals a reason to doubt Smith's competence at trial and sentencing. The postconviction court was not the same court who observed Smith at trial and sentencing. The deference accorded the trial court's competence assessment in Garfoot and Byrge does not apply to the postconviction court here because the basis for that deference does not exist here.

Id., ¶23 (citations omitted). The court of appeals concluded that the postconviction court erred when it "weighed more heavily the uninformed competence opinion[] of defense counsel and the trial court——who knew nothing of Smith's extensive mental health history, the DOC records, the jail records or the two experts' opinions——and discounted the experts' evaluations." Id. Ultimately, the court of appeals concluded that "the experts' reports and testimony and the DOC and jail records all furnish ample evidence that there is reason to doubt Smith's competence at the time of trial and sentencing."[11] Id., ¶26.

---

Case law appears to have conflated two different standards of review for two different considerations that bear on competency. We write to clarify the correct standard of review so that as concerns relative to competency are raised, the reviewing court applies an accurate lens that is particularized to the type of circuit court decision under review. As we have explained, "[u]nder the standard that applies to competency determinations, we will not reverse the circuit court's decision unless it was clearly erroneous." Byrge, 237 Wis. 2d 197, ¶46 (citing Garfoot, 207 Wis. 2d at 223-24). Under the standard that applies to whether there was "reason to doubt" competency, an appellate court should not reverse a circuit court's decision unless it erroneously exercised its discretion in refusing to conduct a competency hearing. McKnight, 65 Wis. 2d at 595-96.

[11] The court of appeals addressed only Smith's "substantive competency" claim. Smith, 357 Wis. 2d 582, ¶18.

18

The court of appeals then vacated the judgment of conviction and ordered a new trial. Id.

¶25 We granted the State's petition for review.

## II. DISCUSSION

### A. Standard of Review

¶26 A competency determination is functionally a factual finding. State v. Byrge, 2000 WI 101, ¶33, 237 Wis. 2d 197, 614 N.W.2d 477. Therefore, we review the circuit court's competency determination under a clearly erroneous standard of review that is particularized to competency findings. Garfoot, 207 Wis. 2d at 224; Byrge, 237 Wis. 2d 197, ¶45.

¶27 In Garfoot, we examined Pickens v. State, 96 Wis. 2d 549, 292 N.W.2d 601 (1980), overruled, in part, on other grounds by State v. Klessig, 211 Wis. 2d 194, 212, 564 N.W.2d 716 (1997) (expressly "affirm[ing] the holding in Pickens as still controlling on the issue of competency"), wherein we held that our review concerning whether a defendant is competent to represent him or herself is limited to whether the circuit court's determination is "'totally unsupported by the facts apparent in the record.'" Garfoot, 207 Wis. 2d at 224 (quoting Pickens, 96 Wis. 2d at 570). In Garfoot, we concluded "that the same deference should be given to the trial court regarding determinations of competence to stand trial as is given for determinations of competence to represent oneself." Id. at 225. In Byrge, we upheld Garfoot, explaining that, "we . . . do not disturb our holding in Garfoot and adhere to the clearly

19

erroneous standard for reviewing circuit court determinations in competency proceedings." Byrge, 237 Wis. 2d 197, ¶45.

¶28 We repeatedly have reaffirmed the propositions of both Pickens and Garfoot as controlling authority on the standard of review applicable to both types of competency determinations; namely, competency to proceed pro se and competency to stand trial.[12] For example, in State v. Imani, 2010 WI 66, ¶19, 326 Wis. 2d 179, 786 N.W.2d 40, we stated that "a circuit court's determination that a defendant is incompetent to proceed pro se 'will be upheld unless totally unsupported by the facts.'" (quoting Pickens, 96 Wis. 2d at 569-70 and citing Garfoot, 207 Wis. 2d at 224); see also State v. Jackson, 2015 WI App 45, ¶29, 363 Wis. 2d 484, 867 N.W.2d 814 (reviewing competency to proceed pro se determination under "totally unsupported by the facts" standard); Dane Cnty. Dep't of Human Servs. v. Susan P.S., 2006 WI App 100, ¶22, 293 Wis. 2d 279, 715 N.W.2d 692 (same); State v. Ruszkiewicz, 2000 WI App 125, ¶38, 237 Wis. 2d 441, 613 N.W.2d 893 (explicitly applying the clearly erroneous standard from Garfoot and Pickens).

¶29 To summarize, we review a circuit court's competency to stand trial determination under the same standard under which we review a competency to proceed pro se determination.

---

[12] Of course, we recognize that, in making the determination of whether a defendant is competent to proceed pro se, a circuit court must consider different proofs than necessary to determining whether a defendant is competent to stand trial. State v. Imani, 2010 WI 66, ¶36, 326 Wis. 2d 179, 786 N.W.2d 40.

Garfoot, 207 Wis. 2d at 225, affirmed by Byrge, 237 Wis. 2d 197, ¶45. We review a competency to proceed pro se determination and uphold that finding unless it is totally unsupported by facts in the record. Imani, 326 Wis. 2d 179, ¶19; Pickens, 96 Wis. 2d at 570; Jackson, 363 Wis. 2d 484, ¶29; Ruszkiewicz, 237 Wis. 2d 441, ¶38. Accordingly, the necessary corollary is that our review of a circuit court's competency to stand trial determination is limited to whether that finding is totally unsupported by facts in the record and, therefore, is clearly erroneous.[13] Byrge, 237 Wis. 2d 197, ¶33; Garfoot, 207 Wis. 2d at 224-25.

¶30 Retrospective competency determinations are inquiries of the facts, but as they existed at a previous time. See generally State v. Johnson, 133 Wis. 2d 207, 224-25, 395 N.W.2d 176 (1986). Accordingly, because retrospective determinations of competency are factual determinations, they, too, are upheld unless totally unsupported by facts in the record and, therefore, clearly erroneous. See Byrge, 237 Wis. 2d 197, ¶33; Garfoot, 207 Wis. 2d at 224-25; Wis. Stat. § 805.17(2) (explaining that "[f]indings of facts shall not be set aside

---

[13] Although we have not had occasion since Byrge and Garfoot to apply this standard of review to a circuit court's determination of a defendant's competency to stand trial, we note that the court of appeals has done so. See, e.g., State v. Dorman, Nos. 2013AP782-CR, 2013AP783-CR, 2013AP784-CR, 2013AP785-CR and 2013AP786-CR, unpublished slip op., ¶5 (Ct. App. Aug. 21, 2014); State v. Colyer, No. 2012AP1090-CR, unpublished slip op., ¶6 (Ct. App. Aug. 27, 2013).

21

unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses").

¶31 We have explained our rationale for deferring to the circuit court's findings in regard to competency of a defendant:

> The trial court is in the best position to make decisions that require conflicting evidence to be weighed. Although the court must ultimately apply a legal test, its determination is functionally a factual one[.]
>
> The trial court's superior ability to observe the defendant and the other evidence presented requires deference to the trial court's decision that a defendant is or is not competent to stand trial. Only the trial court has the opportunity to view the defendant. Only the trial court can judge the credibility of witnesses who testify at the competency hearing.

Garfoot, 207 Wis. 2d at 223.

¶32 In Smith's case, the court of appeals noted the clearly erroneous standard of review, but it nevertheless concluded that deference to the postconviction court's finding was not warranted because "[t]he postconviction court was not the same court [that] observed Smith at trial and sentencing." Smith, 357 Wis. 2d 582, ¶23.

¶33 However, here, the postconviction court held an evidentiary competency hearing, where it had the opportunity to elicit and appraise testimony from Dr. Pankiewicz, Dr. Collins and Attorney Sargent. Moreover, a retrospective competency determination at a postconviction hearing is nonetheless,

22

functionally, a factual finding. See Byrge, 237 Wis. 2d 197, ¶33.

¶34 Therefore, presented with conflicting evidence from the doctors and Attorney Sargent, the postconviction court was the only court in the position to weigh the evidence, assess credibility, and reach a determination regarding Smith's retrospective competency. Accordingly, our review is limited to whether the postconviction court's finding that Smith was competent at trial and sentencing is totally unsupported by facts in the record and, therefore, clearly erroneous. Id., ¶33; Garfoot, 207 Wis. 2d at 224-25.

### B. General Competency Principles

¶35 "It has long been settled that due process of law prohibits the conviction of an incompetent defendant." State ex rel. Vanderbeke v. Endicott, 210 Wis. 2d 502, 512, 563 N.W.2d 883 (1997). "[T]he due process test for determining competency considers whether the defendant: (1) 'has sufficient present ability to consult' with his or her lawyer 'with a reasonable degree of rational understanding;' and (2) 'has a rational as well as factual understanding of the proceedings.'" Byrge, 237 Wis. 2d 197, ¶27 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)). "This two-part 'understand-and-assist' test constitutes the core of the competency-to-stand-trial analysis." Id., ¶28.

¶36 The "understand-and-assist" test is codified at Wis. Stat. § 971.13(1), providing that "[n]o person who lacks substantial mental capacity to understand the proceedings or

23

assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." Additionally, Wis. Stat. § 971.14 sets forth the procedures for determining whether a defendant is competent to stand trial and be sentenced. See id., ¶29 ("A court 'shall proceed under [the provisions of § 971.14] whenever there is reason to doubt a defendant's competency to proceed.'" (alteration in original) (quoting Wis. Stat. § 971.14(1r)(a)). Where there is a reason to doubt competency, the circuit court must appoint at least one examiner to aid in the competency determination, as well as hold a competency hearing where the ultimate determination will be made. Id., ¶30.

¶37 Importantly, the inquiry whether a defendant is competent to stand trial is a judicial, not a medical, determination. Id., ¶31. "Although a defendant may have a history of psychiatric illness, a medical condition does not necessarily render the defendant incompetent to stand trial." Id. "Elaborate diagnoses or elaborate psychiatric evaluations directed to the ultimate treatment of the subject are of little use to a court in determining [whether a defendant is competent]." State ex rel. Haskins v. Cnty. Courts of Dodge & Milwaukee Counties (Haskins I), 62 Wis. 2d 250, 265, 214 N.W.2d 575 (1974). Notwithstanding mental illness, many defendants are able to "interact adequately with defense counsel and possess a sufficient understanding of the proceedings." Rodney J. Uphoff, The Role of the Criminal Defense Lawyer in Representing the Mentally Impaired Defendant: Zealous Advocate or Officer of the

24

Court?, 88 Wis. L. Rev. 65, 70 (1988). Consequently, the circuit court should not make a competency determination simply "on the basis of rubber stamping the report of a psychiatrist." Haskins I, 62 Wis. 2d at 264. Rather, the circuit court must "weigh evidence that the defendant is competent against evidence that he or she is not." Garfoot, 207 Wis. 2d at 222-23. Ultimately, the circuit court's determination is concerned with the defendant's "present mental capacity to understand and assist at the time of the proceedings." Byrge, 237 Wis. 2d 197, ¶31 (emphasis added).

¶38 As we recognized in Johnson, such a determination is particularly difficult, although not impossible, when it is conducted retrospectively. Johnson, 133 Wis. 2d at 224-25. As a defendant's competency may fluctuate over time, retrospectively determining what a defendant's ability to understand and assist in his defense was in the past is "inherently difficult." Id. at 224; Indiana v. Edwards, 554 U.S. 164, 175 (2008) (recognizing that mental illness and competency present complex issues that vary in degree, change over time, and "interfere[] with an individual's functioning at different times in different ways."); 9 Christine M. Wiseman & Michael Tobin, Criminal Practice and Procedure § 17:12 (2d ed. 2008) (explaining that a competency determination is distinct from a defendant's mental health history and that competency may be affected by treatment and medication of an on-going mental health concern).

25

¶39 Bearing these general principles in mind, we will review the postconviction court's retrospective competency determination under the proper deferential standard of review.[14]

## C. Theories of Relief

¶40 As a preliminary matter, we note that Smith moved to vacate the judgment of conviction, and presented three theories to the postconviction court, all relating to whether he was competent at the time of trial and sentencing. First, Smith alleged a "procedural competency" claim, arguing that, at the time of trial and sentencing, the circuit court had reason to doubt his competency and, therefore, should have sua sponte held a competency hearing under Wis. Stat. § 971.14. Second, Smith alleged an ineffective assistance of counsel claim, arguing that trial counsel, Attorney Sargent, had reason to doubt his competency and, therefore, should have moved for a competency hearing pursuant to § 971.14. Third, Smith alleged a "substantive competency" claim, simply arguing that he was convicted and sentenced while incompetent in violation of due process.[15]

---

[14] We note that at the postconviction hearing, Smith's attorney asserted that he had the burden to prove that Smith was incompetent at trial and sentencing. The State agreed. The court of appeals did not address the burden of proof, and neither party briefed the burden of proof. Accordingly, we do not address it.

[15] To our knowledge, Wisconsin courts previously have not characterized claims as "substantive competency" or "procedural competency." However, as Smith characterizes them in this manner, we address them as such.

¶41 Although Smith reasserts these three claims to us in his briefing, all of these claims are not properly before us, as they were raised in neither the State's petition for review nor Smith's response to the State's petition for review. <u>Jankee v. Clark Cnty.</u>, 2000 WI 64, ¶7, 235 Wis. 2d 700, 612 N.W.2d 297.

¶42 However, even if Smith's claims were properly before us, Smith and the court of appeals mistakenly applied an incorrect standard of review and employed an erroneous remedy. To explain further, Smith's "procedural competency" and ineffective assistance claims both are grounded in his argument that the circuit court and trial counsel had reason to doubt Smith's competency, and because no hearing was held, the circuit court erred.

¶43 In regard to holding competency hearings at the trial stage, we have repeatedly noted that before competency proceedings are required, evidence giving rise to a reason to doubt competency must be presented to the circuit court. <u>State v. McKnight</u>, 65 Wis. 2d 582, 595, 223 N.W.2d 550 (1974). In addition, whether there is evidence that does give rise to a reason to doubt a defendant's competency is a question left to the sound discretion of the circuit court. <u>Id.</u> at 596.

¶44 On appeal, where the record reveals doubt about a defendant's competency at the time of trial and sentencing, the remedy is not to vacate the judgment of conviction and order a new trial. Rather, the remedy is a remand to determine whether a meaningful retrospective competency hearing can be held. <u>State v. Weber</u>, 146 Wis. 2d 817, 823 n.3, 433 N.W.2d 583 (Ct.

27

App. 1988). In such an instance, if a meaningful, retrospective competency hearing can be held, then the circuit court must hold the hearing. State v. Haskins (Haskins II), 139 Wis. 2d 257, 267, 407 N.W.2d 309 (Ct. App. 1987) (citing Johnson, 133 Wis. 2d 207, 226-27). If a circuit court determines at a retrospective competency hearing that the defendant was competent at the time of trial, the judgment of conviction stands. Id. However, if after a competency hearing is held, the circuit court finds that the defendant was not competent when he was tried, only then is it appropriate to vacate the judgment of conviction and order a new trial. Id.

¶45 Therefore, even if we were to address Smith's "procedural competency" and ineffective assistance claims, the appropriate remedy for those claims is a retrospective competency hearing to determine whether Smith was competent at the time of trial and sentencing. Of course, Smith already has been afforded a retrospective competency hearing by the postconviction court that determined Smith was competent at the time of trial and sentencing. Consequently, Smith has been afforded the available relief under his "procedural competency" and ineffective assistance claims.

¶46 Furthermore, in granting relief based on Smith's "substantive competency" claim, the court of appeals stated that the record "furnish[ed] ample evidence that there is reason to doubt Smith's competence at the time of trial and sentencing." Smith, 357 Wis. 2d 582, ¶26. Based on this conclusion, reached after applying an incorrect standard of review, the court of

28

appeals vacated the judgment of conviction and granted a new trial. Id. As set forth above, and fully in note 10, supra, where the record reveals a reason to doubt competency, the remedy is a retrospective competency hearing, not a new trial. A determination that the defendant was incompetent is a necessary finding before a new trial may be ordered. Haskins II, 139 Wis. 2d at 267.

¶47 In Smith's case, the postconviction court held a retrospective competency hearing that resulted in its finding that Smith was competent at the time of trial and sentencing. Therefore, the issue appropriate for appellate review is whether that factual finding of the postconviction court is totally unsupported by facts in the record and, therefore, clearly erroneous. Byrge, 237 Wis. 2d 197, ¶33 (citing Garfoot, 207 Wis. 2d at 225).

¶48 We now turn to our review of the postconviction court's competency determination under the proper standard of review.

D. Application

¶49 As set forth above, contrary to the court of appeals' approach, our review of the postconviction court's competency determination is limited to whether the postconviction court's finding that Smith was competent at trial and sentencing is clearly erroneous. Id. We have explained that, particularized to competency determinations, a competency finding is clearly erroneous when it is totally unsupported by facts in the record. Garfoot, 207 Wis. 2d at 224. We conclude that the

29

postconviction court's finding of competency is supported by facts of record and, therefore, it is not clearly erroneous.

¶50 The postconviction court heard testimony from Dr. Collins and Dr. Wasielewski, both opining that Smith was incompetent at the time of trial and sentencing, which occurred in September 2009 and December 2009, over two years prior to the doctors' retrospective competency determinations. The doctors' evaluations relied heavily on Smith's jail records that documented his mental health conditions and behavior near the time that he was tried and sentenced. The doctors noted that Smith's sentencing allocution similarly tracked some of the rambling talk that the jail records indicated. According to Dr. Collins, Smith was likely "actively symptomatic" at trial and sentencing.

¶51 The postconviction court also heard testimony from Attorney Sargent, who testified that at no point during his representation did he question Smith's ability to understand and assist in his defense. Attorney Sargent gave various examples where he discussed defense strategy with Smith. During numerous interactions, Attorney Sargent observed that Smith was able to understand and assist in his defense, including plea negotiations, jury selection, and whether to testify. The record also shows that Smith was able to conduct a coherent and responsive colloquy with the circuit court at both the Miranda-Goodchild hearing, and when he waived his right to testify at trial. Particularly with respect to waiving his right to testify, Smith showed understanding of the proceedings and the

consequences of his choice, as well as the ability to appropriately respond using more than mere "yes" or "no" answers. The record also reflects Smith's ability to confer with Attorney Sargent regarding jury selection.

¶52 In its decision, the postconviction court correctly noted that, although the doctors were well-respected and competent, the ultimate finding of competency is a judicial determination rather than a medical one. Stated otherwise, a defendant can have mental health concerns and nevertheless be competent to stand trial and be sentenced, so long as he can understand the proceedings and assist counsel. Byrge, 237 Wis. 2d 197, ¶31.

¶53 The postconviction court stated that the doctors' retrospective evaluations were not convincing enough to establish that Smith had been incompetent at the time of trial and sentencing. Instead, the postconviction court believed Attorney Sargent's testimony that Smith was able to understand and assist in his defense. The postconviction court further relied on the circuit court's interaction with Smith during multiple colloquies, which did not give rise to concern about Smith's competency. Accordingly, the postconviction court made the factual finding that Smith had been competent at the time of trial and sentencing.

¶54 In reversing the postconviction court, the court of appeals noted that the postconviction court rejected experts' testimony, notwithstanding its acknowledgement of their professional qualifications. Smith, 357 Wis. 2d 582, ¶24. The

court of appeals emphasized that Attorney Sargent was not aware of Smith's jail records or the mental health history and bizarre behavior that they revealed. Id., ¶25. Therefore, according to the court of appeals, the experts' testimony was more convincing than Attorney Sargent's testimony. Id.

¶55 We conclude that the decision of the court of appeals is grounded in an improper weighing of evidence. The postconviction court was not required to accept the testimony of experts. Byrge, 237 Wis. 2d 197, ¶48 ("Elaborate psychiatric evaluations sometimes introduce a clinical diagnosis that may not speak to competency to proceed."). Rather than rubberstamping experts' retrospective evaluations, the postconviction court weighed evidence and ultimately was convinced by Attorney Sargent's testimony. See Medina v. California, 505 U.S. 437, 450 (1992) ("[D]efense counsel will often have the best-informed view of the defendant's ability to participate in his defense.").

¶56 The testimony at the competency hearing could have resulted in two different findings: Smith was competent or not competent at the time of trial and sentencing. We review the record for evidence that supports the postconviction court's finding. See Garfoot, 207 Wis. 2d at 224. As set forth above, the record does contain evidence that supports the postconviction court's finding that Smith was competent at trial and sentencing. Accordingly, the postconviction court's competency determination is not clearly erroneous.

32

¶57 Furthermore, an appellate court is not at liberty to disturb a postconviction court's factual finding of competency simply because it would have weighed the evidence differently. See Byrge, 237 Wis. 2d 197, ¶33.   Therefore, we conclude that the court of appeals erred when it weighed the evidence and failed to give proper deference to the postconviction court's competency finding.

### III.   CONCLUSION

¶58  In light of the foregoing, we conclude that the court of appeals failed to apply the clearly erroneous standard of review to the postconviction court's finding of competency and improperly weighed evidence rather than giving deference to the postconviction court's finding.   Reviewing the evidence under the proper standard, we conclude that the postconviction court's finding that Smith was competent to stand trial and be sentenced is not clearly erroneous.   Accordingly, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶59  REBECCA G. BRADLEY, J., did not participate.

¶60 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I concur in the court's conclusion that the court of appeals "failed to apply the clearly erroneous standard of review to the postconviction court's finding of competency and improperly weighed evidence rather than giving deference to the postconviction court's finding." Majority op., ¶58. I further agree that that the postconviction court's finding of competency is reviewed under the clearly erroneous standard of review, and that the postconviction court's competency determination is not clearly erroneous. See id.

¶61 However, I would not decide the question of the proper formulation of the clearly erroneous standard in this specific context. As the opinion of the court makes clear, we have stated in prior cases that the applicable formulation of the clearly erroneous standard with respect to competency to proceed pro se and competency to stand trial determinations is whether the circuit court's determination is "totally unsupported by the facts apparent in the record." Id., ¶27-28 (citations omitted). It is less clear, however, that this "particularized" clearly erroneous standard, id., ¶26, is applicable in cases involving review of retrospective competency determinations, pursuant to which a postconviction court reviews proceedings held before the trial court.

¶62 This question has not been briefed by the parties or argued before this court. Resolution of the question is unnecessary because the circuit court's decision was not clearly erroneous, whether reviewed under the "totally unsupported"

1

formulation set forth in the opinion of the court or reviewed under the formulation set forth in the dissent.  The court may well be correct in applying the "totally unsupported" formulation of the clearly erroneous standard to retrospective competency determinations, but this case is not the setting in which to decide that question.

¶63  For the foregoing reasons, I respectfully concur.

¶64 SHIRLEY S. ABRAHAMSON, J.   *(dissenting).*  At issue in this case is what standard of review an appellate court applies in reviewing a circuit court's retrospective evaluation at a postconviction hearing of a criminal defendant's competency to stand trial.

¶65 The majority opinion sets forth the facts and procedural history of the instant case at length.  To clarify the procedural history of the instant case, I have included as Attachment A an outline of the relevant procedural history.

¶66 The majority opinion, the court of appeals, and I agree that the "clearly erroneous" standard of review applies to a circuit court's retrospective evaluation of a criminal defendant's competency to stand trial.  Two cases apply this standard of review to a circuit court's evaluation of a defendant's competency to stand trial:  State v. Byrge, 2000 WI 101, ¶4, 237 Wis. 2d 197, 614 N.W.2d 477; and State v. Garfoot, 207 Wis. 2d 214, 216-17, 558 N.W.2d 626 (1997).[1]

---

[1] In State v. Byrge, 2000 WI 101, 237 Wis. 2d 197, 614 N.W.2d 477, the court held that a circuit court's findings regarding competency to stand trial "will not be upset unless they are clearly erroneous because a competency hearing presents a unique category of inquiry in which the circuit court is in the best position to apply the law to the facts." Byrge, 237 Wis. 2d 197, ¶4.

In State v. Garfoot, 207 Wis. 2d 214, 558 N.W.2d 626 (1997), this court held that "[b]ecause the trial court is in the best position to observe the witnesses and the defendant and to weigh the credible evidence on both sides, appellate courts should only reverse . . . determinations [of competency to stand trial] when they are clearly erroneous." Garfoot, 207 Wis. 2d at 225.

1

¶67 The difference between the court of appeals opinion and the majority opinion revolves around the formulation of the "clearly erroneous" standard. The court of appeals correctly stated: "A finding is clearly erroneous when <u>although there is evidence to support it</u>, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[2]

¶68 This formulation of the "clearly erroneous" standard and a closely related formulation stating that findings of fact are clearly erroneous when "'they are against the great weight and clear preponderance of the evidence'" are deeply rooted in Wisconsin law and are applied in a variety of contexts. <u>See</u> Hon. Kitty Brennan, <u>Standards of Appellate Review</u>, § VI.A.1.a., <u>in</u> Michael S. Heffernan, <u>Appellate Practice and Procedure in Wisconsin</u> (6th ed. 2015) (citing cases).

¶69 The court has applied the "great weight and clear preponderance" formulation in, for example, <u>Phelps v. Physicians Insurance Co.</u>, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615, a tort case authored by Justice Roggensack; <u>State v. Arias</u>, 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748, a Fourth Amendment search and seizure case also authored by Justice Roggensack; and <u>J.A.L. v. State</u>, 162 Wis. 2d 940, 966, 471 N.W.2d 493 (1991), a

---

[2] <u>State v. Smith</u>, 2014 WI App 98, ¶19, 357 Wis. 2d 582, 855 N.W.2d 422 (quotation omitted); <u>see also</u> <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573 (1986) (quoting a virtually identical formulation of the "clearly erroneous" standard).

case reviewing a juvenile court's determination of mental illness under Wis. Stat. § 48.18(5) (1989-90).

¶70 Nonetheless, the majority opinion, without the support of briefs or oral argument by either the State or the defendant regarding the formulation of the "clearly erroneous" standard, breaks new ground, while pretending to apply precedent. The majority opinion sets forth a new articulation of the "clearly erroneous" standard. It explains that our review of a circuit court's finding regarding an accused's competency to stand trial "is limited to whether that finding is totally unsupported by facts in the record and, therefore, is clearly erroneous."[3]

¶71 I write separately to make two points.

¶72 First, the majority opinion's "totally unsupported by the facts" formulation of the "clearly erroneous" standard was first referenced in the competency to stand trial context in State v. Garfoot, 207 Wis. 2d 214, 224, 558 N.W.2d 626 (1997). This standard is derived from a distinct context——a circuit court's determination of a defendant's competency to defend him or herself pro se. Since Garfoot, this court has not applied the "totally unsupported by the facts" standard in reviewing a circuit court's determination of a defendant's competency to stand trial.

---

[3] Majority op., ¶29 (citing Byrge, 237 Wis. 2d 197, ¶33; Garfoot, 207 Wis. 2d at 224-25); see also majority op., ¶30 ("[R]etrospective determinations of competency . . . , too, are upheld unless totally unsupported by facts in the record and, therefore, clearly erroneous.") (citations omitted).

3

¶73 Moreover, not only is the majority opinion's formulation of "clearly erroneous" inconsistent with other cases articulating the "clearly erroneous" standard of review, but the majority opinion also grants far too much deference to a postconviction circuit court's retrospective competency determinations. A postconviction court conducting a retrospective competency determination, unlike the trial court, does not have the opportunity to observe the defendant at trial.

¶74 Accordingly, I would adhere to our existing, well-settled articulations of the "clearly erroneous" standard in reviewing the postconviction court's evaluation of Smith's competency to stand trial.

¶75 Second, applying the accepted formulations of the "clearly erroneous" standard of review to the facts of the instant case, I am left with a "definite and firm conviction" that the postconviction court made a mistake in finding the defendant, Smith, competent to stand trial. The postconviction court's conclusion is contrary to the "great weight and clear preponderance of the evidence."

¶76 As a result, I would affirm the court of appeals and remand the matter to the circuit court to vacate Smith's conviction and sentence and order a new trial.

¶77 For these reasons, I dissent and write separately.

I

¶78 I start with the basics. Trial of an incompetent criminal defendant deprives the defendant of his or her due process right to a fair trial and violates state law. See Wis.

4

Stat. § 971.13(1);[4] State v. Byrge, 2000 WI 101, ¶¶27-28, 237 Wis. 2d 197, 614 N.W.2d 477. A challenge to competency to stand trial cannot be waived. State v. Johnson, 133 Wis. 2d 207, 218 n.1, 395 N.W.2d 176 (1986).

¶79 Although the majority opinion purports to apply the "clearly erroneous" standard adopted in Garfoot and Byrge in reviewing the postconviction court's determination of Smith's competency to stand trial,[5] the majority opinion verbalizes a new articulation of "clearly erroneous": A competency determination is "clearly erroneous," states the majority opinion, if it is "totally unsupported by facts in the record."[6]

¶80 This articulation of the "clearly erroneous" standard is significantly flawed.

¶81 First, the majority opinion relies on Garfoot as the source of its articulation of the "clearly erroneous" standard. This reliance is misguided.

¶82 Garfoot invoked the "totally unsupported" language from Pickens v. State, 96 Wis. 2d 549, 292 N.W.2d 601 (1980), a very different case than Garfoot, Byrge, or the instant case.

---

[4] Wisconsin Stat. § 971.13(1) provides: "No person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures."

[5] See majority op., ¶26.

[6] Majority op., ¶29 (citing Garfoot, 207 Wis. 2d 214, 224) (emphasis added).

¶83 In Pickens, the court reviewed a trial judge's determination of an accused's competency to represent himself at trial. Pickens was not a competence to stand trial case. Rather, the issue in Pickens was the defendant's competence to represent himself at trial.[7] Competence to represent oneself at trial and competence to stand trial are distinct inquiries.[8]

¶84 The Pickens court held that whether the accused "is or is not competent to represent himself will be upheld unless totally unsupported by the facts apparent in the record." Pickens, 96 Wis. 2d at 570. Pickens offered no citation or authority supporting its formulation of the standard of review.

¶85 Although the Garfoot court stated that the Pickens standard is "essentially a 'clearly erroneous' standard of review," and that "the same deference should be given to the trial court regarding determinations of competence to stand trial as is given for determinations of competence to represent oneself,"[9] this court has not applied the Pickens formulation in cases addressing the issue of a defendant's competence to stand trial since Garfoot.

¶86 For instance, in Byrge, a competence to stand trial case that followed soon after Garfoot, the court did not apply

---

[7] See Pickens, 96 Wis. 2d at 568-69.

[8] See Pickens, 96 Wis. 2d at 567 ("[C]ompetency to stand trial is not the same as competency to proceed pro se . . . .").

[9] Garfoot, 207 Wis. 2d at 224-25.

6

the Pickens "totally unsupported by the facts apparent in the record" standard.[10]

¶87 In sum, the formulation——"totally unsupported by the facts apparent in the record"——derived from Pickens is applied almost exclusively in cases addressing a defendant's competency to defend him or herself at trial.[11]

¶88 One unsupported sentence in Garfoot, taken out of context, is the majority opinion's sole support for its formulation of the "clearly erroneous" standard.

¶89 Second, as I stated previously, the majority opinion's "totally unsupported by facts in the record" formulation of the "clearly erroneous" standard is inconsistent with numerous Wisconsin cases that apply the "clearly erroneous" standard.

---

[10] See generally Byrge, 237 Wis. 2d 197.

[11] For cases reviewing circuit court determinations regarding a defendant's competency to represent him or herself at trial under the Pickens formulation, see, for example, State v. Imani, 2010 WI 66, ¶19, 326 Wis. 2d 179, 786 N.W.2d 40; State v. Brown, No. 2015AP522-CR, unpublished slip op., ¶59 (Wis. Ct. App. Oct. 9, 2015); State v. Mason, No. 2013AP573-CR, unpublished slip op., ¶6 (Wis. Ct. App. Jan. 14, 2014); State v. Dehler, Nos. 2009AP1500-CR & 2009AP1501-CR, unpublished slip op., ¶16 (Wis. Ct. App. Aug. 10, 2010); State v. Ruszkiewicz, 2000 WI App 125, ¶38, 237 Wis. 2d 441, 613 N.W.2d 893.

The only cases I could find applying the "totally unsupported by the facts" Pickens formulation in reviewing determinations of a defendant's competency to stand trial or to assist in postconviction proceedings appear to be State v. Dorman, Nos. 2013AP782-86-CR, unpublished slip op., ¶5 (Wis. Ct. App. Aug. 21, 2014); State v. Colyer, No. 2012AP1090-CR, unpublished slip op., ¶6 (Wis. Ct. App. Aug. 27, 2013), and State v. Meeks, 2002 WI App 65, ¶10, 251 Wis. 2d 361, 643 N.W.2d 526, which was reversed on other grounds in State v. Meeks, 2003 WI 104, 263 Wis. 2d 794, 666 N.W.2d 859.

7

¶90 Numerous Wisconsin cases conclude that a finding of fact is clearly erroneous when "it is against the great weight and clear preponderance of the evidence." See, e.g., Phelps v. Phys. Ins. Co., 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (Roggensack, J., majority) (internal quotation marks omitted) (reviewing a trial court's determination regarding the employment status of a medical resident under this formulation of the "clearly erroneous" standard); State v. Arias, 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748 (Roggensack, J., majority) (reviewing circuit court findings of fact regarding a search and seizure); J.A.L. v. State, 162 Wis. 2d 940, 966, 471 N.W.2d 493 (1991) (reviewing a juvenile court's determination of mental illness under Wis. Stat. § 48.18(5) (1989-90)).

¶91 These cases demonstrate that a finding of fact may be clearly erroneous even when there is evidence to support the finding.

¶92 Third, the United States Supreme Court has analyzed the "clearly erroneous" standard. It has adopted in United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948), a similar formulation of the "clearly erroneous" standard that Wisconsin case law has adopted and that I espouse in this dissent.

¶93 The United States Supreme Court stated: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Gypsum, 333 U.S. at 395 (footnotes omitted).

8

¶94 The Gypsum Court relied on Federal Rule of Civil Procedure 52(a), which provides that reviewing courts must not overturn factual findings unless clearly erroneous and must give due regard to the opportunity of the trial court to assess witness credibility.

¶95 Federal Rule of Civil Procedure 52(a) is nearly identical to Wis. Stat. § 805.17(2), which provides in relevant part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

¶96 Given the similarities between Federal Rule of Civil Procedure 52(a) and Wis. Stat. § 805.17(2), a United States Supreme Court case, such as Gypsum, interpreting the "clearly erroneous" standard is instructive. See Rao v. WMA Secs., Inc., 2008 WI 73, ¶47, 310 Wis. 2d 623, 752 N.W.2d 220 ("Because the Wisconsin rules . . . mirror the federal rules, federal law is also instructive in interpreting the Wisconsin rules.").

¶97 Under United States Supreme Court (and Wisconsin) precedent, a finding of fact is clearly erroneous even when there is evidence to support the finding, if an appellate court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[12]

---

[12] United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); see also Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1986) (quoting Gypsum, 333 U.S. at 395).

9

¶98 Fourth and finally, both Garfoot and Byrge dealt with evaluations of competency to stand trial made prior to trial.[13] These fact situations justify greater deference to trial court findings regarding a defendant's competency to stand trial than is justified when a postconviction court (different than the trial court) conducts a retrospective evaluation of a defendant's competency to stand trial.

¶99 As the court of appeals noted in the instant case, in Garfoot and Byrge this court contended that deference to the circuit court's competency determination was warranted because the trial court had superior ability to observe the defendant and appraise witness credibility and demeanor.[14] These considerations are absent or significantly weaker when a postconviction court (different than the trial court) conducts a retrospective evaluation of a defendant's competency to stand trial.[15]

¶100 In sum, the majority opinion's conclusion that a circuit court's finding regarding a defendant's competency to

---

[13] See Garfoot, 207 Wis. 2d at 217; Byrge, 237 Wis. 2d 197, ¶13.

[14] See Byrge, 237 Wis. 2d 197, ¶75 ("[A] competency hearing presents a unique category of inquiry in which the circuit court is in the best position to appraise witness credibility and demeanor and therefore to apply the law to the facts."); Garfoot, 207 Wis. 2d at 225 ("Because the trial court is in the best position to observe the witnesses and the defendant and to weigh the credible evidence on both sides, appellate courts should only reverse such determinations when they are clearly erroneous.") (citing Wis. Stat. § 805.17(2)).

[15] Smith, 357 Wis. 2d 582, ¶23.

stand trial should be upheld so long as it is not "totally unsupported" by facts in the record does not comport with Wisconsin or United States Supreme Court precedent, and is an unreasonable interpretation of the "clearly erroneous" standard of review. According to the majority opinion, a circuit court's determination of competency to stand trial would survive appeal even in the face of overwhelming contrary evidence and even in circumstances such as those in the present case in which the postconviction court stands in little better position than an appellate court in determining the defendant's competency at a point in time several years prior.

¶101 Accordingly, I disagree with the majority opinion's formulation of the "clearly erroneous" standard of review. I conclude that a circuit court's retrospective determination of a defendant's competency to stand trial is clearly erroneous when, "<u>although there is evidence to support</u> [the circuit court's conclusion], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," or when the postconviction court's finding is contrary to the "great weight or clear preponderance of the evidence."[16]

II

---

[16] <u>Phelps v. Phys. Ins. Co.</u>, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (quotation omitted); <u>Smith</u>, 357 Wis. 2d 582, ¶19 (quotation omitted).

11

¶102 I conclude, as did the court of appeals, that the postconviction court erred as a matter of law in finding that Smith was competent to stand trial.[17]

¶103 The postconviction court reached its decision based on two errors of law:

(1) The postconviction court was skeptical of retrospective competency determinations. Yet retrospective competency evaluations are well-established in Wisconsin law.

(2) The postconviction court did not consider the medical evidence presented by the medical experts. The postconviction court seemed to rely solely on the testimony of Smith's trial counsel.

(1)

¶104 The postconviction court erred as a matter of law by being skeptical of retrospective competency determinations.

¶105 Even before hearing the evidence regarding Smith's competency to stand trial, the postconviction court expressed skepticism toward retrospective evaluations of a defendant's competency to stand trial, stating: "To say someone——if this opens a door, you can [retrospectively challenge trial competency] [i]n every case then. Defense can do this on every case. Come back and challenge the defense attorney at the time,

---

[17] Two judges presided at postconviction proceedings. This review is of Milwaukee County Judge David Borowski's finding of competency to stand trial.

say he or she didn't raise competency two years later. Oh, now find a doctor."

¶106 Similarly, even before hearing the testimony of the medical experts, the postconviction court was skeptical of the testimony, remarking that "[the medical expert is] making a decision based not which [sic] she's observing, not what she's seeing at the time, not what he is or is not perceiving, not his ability in an interview contemporaneous to the proceedings. She's going back two years."

¶107 Throughout the competency proceedings, the postconviction court dismissed even the possibility of a retrospective competency proceeding, let alone the idea that "a meaningful retrospective hearing may be possible by analyzing the pertinent legal and medical records, in combination with a current medical evaluation, to produce a hindsight picture of [the defendant's] competency at the time of trial." See State v. Johnson, 133 Wis. 2d 207, 225, 395 N.W.2d 176 (1986)

¶108 In sum, the transcript of the postconviction court's comments shows that the court believed that only the individuals "who were present" at the time of trial can credibly assess the defendant's competency to stand trial. In effect, the postconviction court gave little weight to any testimony or medical expert report in the retrospective competency hearing.

¶109 The postconviction court's views of retrospective competency hearings do not accurately reflect Wisconsin law. Retrospective evaluation of a defendant's competency to stand trial is appropriate and well-established in our case law when a

13

defendant's competency is questioned after a conviction at trial or the acceptance of a guilty plea. See Johnson, 133 Wis. 2d at 225; State v. Haskins, 139 Wis. 2d 257, 267, 407 N.W.2d 309 (Ct. App. 1987).

¶110 This court has observed that "the mere passage of time may not make [a retrospective competency hearing] meaningless," and "a meaningful . . . hearing may be possible by analyzing the pertinent legal and medical records, in combination with a current medical evaluation, to produce a hindsight picture of [the defendant's] competency at the time of trial." Johnson, 133 Wis. 2d at 225 (internal quotation marks omitted).

¶111 The majority opinion paints the postconviction court's evaluation of the court-appointed medical experts' testimony as an assessment of the court-appointed medical experts' credibility and states that the postconviction court is the only court able to evaluate credibility.[18]

¶112 The postconviction court said nothing that directly or indirectly challenged the credibility of these particular experts. The postconviction court praised both medical experts, extolling their experience, credentials, and ability.[19]

---

[18] See majority op., ¶34 ("[T]he postconviction court was the only court in the position to weigh the evidence, assess credibility, and reach a determination regarding Smith's retrospective competency.").

[19] The postconviction court commented positively about the two testifying medical experts as follows:

"Dr. Collins is an absolute expert in the field; I have the utmost respect for her; she's testified multiple times . . . ."

(continued)

14

¶113 The only flaw the postconviction court identified in the medical experts' testimony was that the medical experts' conclusions were not supported by an interview of Smith at the time of trial and sentencing.

¶114 This flaw relates to the concept of retrospective competency evaluation and could have been said about any medical expert conducting a retrospective competency evaluation.

¶115 Rejection of the medical experts' testimony solely because it is not based on an interview of Smith at the time of trial and sentencing is inconsistent with Johnson, which clearly authorizes retrospective competency evaluations, including evaluation by medical experts. Thus, the postconviction court's evaluation of the record is contrary to law and the postconviction court's finding of fact regarding Smith's competency is based on an error of law.

¶116 In sum, the postconviction court's skepticism toward retrospective competency evaluations was an error of law that totally undermined the postconviction court's factual finding.

(2)

¶117 The postconviction court's approach to finding that Smith was competent to stand trial seems to have been that had Smith been incompetent to stand trial, the trial court, the

---

"Dr. Pankiewicz and Dr. Collins are very experienced doctors, and I've seen both of them testify. I read reports from both of the them. Dr. Pankiewicz said he's done I think 2000 evaluations. . . . and Dr. Collins, obviously, has done hundreds and hundreds of evaluations."

15

State, and Smith's trial counsel would have raised the competency issue at the time of trial or sentencing. Because no one raised the issue at the time of trial or sentencing, the postconviction court reasoned that Smith was competent to stand trial.

¶118 This reasoning led the postconviction court to seemingly consider only the testimony of Smith's trial counsel.

¶119 The postconviction court explained its reliance on the trial court's failure to address the competency issue as the basis for its decision to find competence as follows:

> The center of the defendant's argument is this: The people directly involved with the defendant during the trial and sentencing, his attorney and the presiding judge, failed to notice that the defendant was not competent. The evidence that proves their collective failure is the testimony of doctors who had no contact with the defendant during the trial or at sentencing. In other words, people who were not present at the relevant time know more than the people who were present.

¶120 In other words, because the issue of Smith's competency to stand trial was not raised or considered at the trial or at sentencing, the postconviction court seemed convinced that Smith was obviously competent. According to the postconviction court, if Smith were incompetent, someone would have raised the issue at trial or sentencing.

¶121 This line of reasoning is misguided and is not borne out by the trial court record. The postconviction court failed to recognize that gaps existed in the trial court record and the information at Smith's trial counsel's disposal. Had the gaps been filled at trial or sentencing, the trial court, the State,

16

or Smith's defense counsel might have had reason to doubt Smith's competency.

¶122 In the instant case, neither the circuit court judge, who presided at Smith's trial, nor the State's nor Smith's trial counsel raised questions regarding the defendant's competency to stand trial prior to or during the trial or sentencing. As a result, the circuit court had no reason to hold competency proceedings or appoint medical experts to assess the defendant's competence prior to or at the time of trial or sentencing. See Wis. Stat. § 971.14(1r)(a), (2)(a) (requiring competency proceedings and the appointment of medical examiners whenever "there is reason to doubt a defendant's competency to proceed").

¶123 In contrast with the limited record in the trial court regarding Smith's competence to stand trial, the medical experts had access to records that the trial court and trial counsel did not have.

¶124 The records upon which the medical experts relied demonstrate that Smith had a well-documented history of mental illness dating back to at least 1993, that he was previously diagnosed with either a "delusional disorder" or "schizophrenia," and that civil commitment proceedings were initiated against him.[20] In the months leading up to conviction and sentencing, Smith's medical records showed he was acting strangely and exhibiting psychotic symptoms.[21]

---

[20] See Smith, 357 Wis. 2d 582, ¶12.

[21] See id.

17

¶125 During the same month as his trial, jail staff noted that Smith was "'confusing past cases with current,' 'talking to himself,' and acting 'confrontational,'" and medical records showed Smith was rambling and out of touch with reality.[22]

¶126 After sentencing, Smith was described as "actively psychotic," refusing medication for diabetes because he feared that nursing staff would kill him with shots and by feeding him "whole foods."[23]

¶127 At sentencing, Smith was given an opportunity to speak in his own behalf. Smith's statement was rambling. It was largely irrelevant and incoherent. Unfortunately, neither the circuit court nor trial counsel for the State or Smith viewed Smith's allocution as raising any concern about Smith's competency. They let Smith speak and then ignored the possible implications of his behavior.

¶128 Neither the circuit court judge nor the State's trial counsel nor Smith's trial counsel were fully aware at the time of conviction and sentencing of the medical and jail records (later available to the medical experts).

¶129 The postconviction court failed to consider seriously these pertinent records. Instead, the postconviction court simply adopted the position of Smith's trial counsel that Smith was competent, and ignored Smith's trial counsel's ignorance of the contents of records upon which the medical experts based

---

[22] See id.

[23] See id.

18

their opinions. The postconviction court also seemingly ignored reasons to be skeptical of defense counsel's testimony.[24]

¶130 The majority opinion supports the postconviction court's approach by pointing to two colloquies between Smith and the circuit court (namely Judge Conen, who presided over Smith's trial) as demonstrating Smith's competence.[25]

¶131 The colloquies are weak. The first colloquy (which occurred at the Miranda-Goodchild hearing), does not reveal very much about Smith's mental state. Smith responds to the circuit court's questions with only a "yes," "no," or "yeah." Smith's responses in the second colloquy (concerning his right to testify) are only slightly more developed.[26]

¶132 Colloquies resulting in simple answers are generally viewed as ineffective for determining the accused's mental state. The goal of a colloquy is to get the accused to speak in his or her own words so that the accused's mental condition and

---

[24] As Robert D. Miller and Edward J. Germain wrote, "[d]efense attorneys cannot be considered as objective or uninvolved witnesses to the competency of their clients, either at the time of the original trial or at retrospective competency hearings." Robert D. Miller & Edward J. Germain, The Retrospective Evaluation of Competency to Stand Trial, 11 Int'l J. L. & Psychiatry 113, 123 (1988). Defense counsel have an interest in not being found ineffective for failing to raise competency issues.

Miller and Germain also raise the question whether a trial judge's view of a defendant's competency may be questionable as well. See id. at 124.

[25] See majority op., ¶¶6-7.

[26] See id.

19

understanding can be evaluated. One-word responses are not persuasive.[27]

¶133 At least one of the court-appointed medical experts stated that Smith's answers in the colloquies on which the majority opinion relies are not inconsistent with Smith "being sick and symptomatic at the same time [as the colloquies]."

¶134 Moreover, as two Wisconsin medical experts wrote in an article regarding retrospective competency evaluations: "Unfortunately [court] records will usually not reveal as much about a defendant's mental state as a focus[]ed clinical evaluation, unless it was so disordered as to have been obvious to everyone involved in the process." Robert D. Miller & Edward J. Germain, The Retrospective Evaluation of Competency to Stand Trial, 11 Int'l J. L. & Psychiatry 113, 124 (1988).

¶135 Given the significant weight of the medical evaluations prepared by the two medical experts and the postconviction court's erroneous dismissal of this evidence, I conclude, as did the court of appeals, that the postconviction court's finding that Smith was competent to stand trial was an error of law.

¶136 Accordingly, I would affirm the decision of the court of appeals and remand the matter to the circuit court to vacate Smith's conviction and sentence and order a new trial.

---

[27] See State v. Brown, 2006 WI 100, ¶58 n.27, 293 Wis. 2d 594, 716 N.W.2d 906 (discussing circumstances in which a colloquy should be expanded to ensure a defendant's understanding).

¶137 For the reasons set forth, I dissent and write separately.

¶138 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

# ATTACHMENT A: Procedural History

The relevant procedural history is as follows:

- On October 2, 2007, victim A.H. was beaten and raped.

- On January 7, 2009, Smith was charged with second-degree sexual assault of A.H.

- On October 12, 2009, a jury trial began before Judge Jeffrey A. Conen of Milwaukee County. Smith did not testify at trial.

- On October 14, 2009, the jury convicted Smith of second-degree sexual assault.

- On December 11, 2009, at the sentencing hearing, Smith gave a rambling and incoherent allocution. Judge Conen sentenced Smith to 25 years of initial confinement and 15 years of extended supervision.

- On June 18, 2010, Smith's postconviction counsel filed a motion for an evaluation of Smith's competency to assist in postconviction proceedings.

- On September 13, 2010, a competency hearing was held before Judge Jean DiMotto of Milwaukee County at which the defendant's medical expert, Dr. Deborah Collins, testified that Smith was not competent to proceed.

- On March 14, 2011, after a court-appointed medical expert, Dr. John Pankiewicz, concluded that Smith was incompetent to proceed and unlikely to regain competency within a reasonable period of time, Judge DiMotto found Smith incompetent to assist in postconviction

1

proceedings. A guardian ad litem was appointed for Smith.

- On September 30, 2011, Smith's postconviction counsel filed a motion to vacate Smith's conviction and sentence, alleging that Smith was incompetent at the time of trial and sentencing.

- The postconviction court, Judge David Borowski of Milwaukee County, ordered Drs. Collins and Pankiewicz to conduct a retrospective evaluation of Smith's competency at the time of trial and sentencing. A court-appointed medical expert and a medical expert selected by Smith reviewed records, including the prior psychiatric examinations of Smith, jail and medical records, and the transcripts of Smith's allocution.

- On August 2, 2012, Judge Borowski held a competency hearing at which both medical experts testified that Smith was incompetent at the time of trial and sentencing.

- On September 14, 2012, Judge Borowski continued the competency hearing, at which Smith's trial counsel testified that he had no reason to doubt Smith's competency to stand trial.

- On May 2, 2013, Judge Borowski denied Smith's motion to vacate his conviction and sentence and order a new trial, finding that Smith was competent to stand trial.

2